[No. 9790.  Department Two.  November 18, 1911.]

KATE F. BRACE, *Plaintiff and Respondent*, v. SUPERIOR
LAND COMPANY *et al.*, *Defendants*, AMERICAN SAVINGS
BANK & TRUST COMPANY, *Intervener and Appellant.*[1]

RECORDS — MORTGAGES — REGISTRATION OF LAND TITLES—TORRENS
ACT—PRIORITIES.  The first mortgage registered takes priority over
other instruments, although previously executed, under § 44 of the
Torrens act (Rem. & Bal. Code, § 8852), providing that the owner
of registered land may dispose of the same as if not registered by
the usual forms of deeds and instruments, but that no instrument
shall take effect or bind the land, operating only as a contract be-
tween the parties until it is registered, the act of registration being
expressly made the operative act to convey or affect the land.

RECORDS—REGISTRATION UNDER TORRENS ACT—BONA FIDE PUR-
CHASERS.  One cannot be a *bona fide* purchaser of land registered
under the Torrens act until his conveyance is registered, although
by Rem. & Bal. Code, §§ 8838, 8857, it appears that the act was for
the protection of *bona fide* purchasers of registered land.

MORTGAGES—ANTECEDENT DEBT—BONA FIDE PURCHASER.  Upon a
conveyance of real estate to secure an antecedent debt, the grantee
is not a *bona fide* purchaser.

RECORDS—MORTGAGES—PRIORITIES — REGISTRATION UNDER TORRENS
ACT—ESTOPPEL—LACHES.  A person who holds a prior mortgage of
land registered under the Torrens act, and who failed to have his in-
strument registered because unwilling to pay the taxes necessary to
obtain registration, is estopped by laches from asserting a priority
over one who paid the taxes to secure registration of a new mort-
gage, given to revive the lien of an earlier mortgage omitted from
the memorial in the registration decree by mutual mistake of the
parties.

MORTGAGES—PRIORITIES—REGISTRATION UNDER TORRENS ACT—MIS-
TAKE—REVIVAL OF LIEN.  Where the lien of a purchase money mort-
gage was lost through a mistake in registering the land under the
Torrens act, a new mortgage given to revive the lien is not, in the
ordinary sense, given for an antecedent debt, and may be treated in
equity as reinstating the lien of the original mortgage.

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered May 22, 1911, in favor of the

[1] Reported in 118 Pac. 910.

plaintiff, after a trial on the merits before the court without a jury, in an action to foreclose a mortgage. Affirmed.

*Farrell, Kane & Stratton,* for appellant and intervener.
*Walter L. Johnstone,* for respondent.

Ellis, J.—This is an action to foreclose a mortgage for $3,800, given by Superior Land Company to the respondent,. Kate F. Brace, for the purchase price of the east half of lots 3 and 4, of block 18, Mercer's addition to Seattle. The original mortgage was executed on August 15, 1906, and was recorded before the passage of the act approved March 19, 1907, commonly called the Torrens Land Act, found in Rem. & Bal. Code, §§ 8806 to 8905, inclusive. After the passage of that act, the Superior Land Company, which owned the whole of these lots, applied to the superior court of King county to have them registered under the act. Kate F. Brace was made a party, and accepted service of summons in that proceeding, but made no appearance. The application for registration admitted the lien of the Brace mortgage, as follows:

"Kate F. Brace, Seattle, Washington, mortgage; $3,-800.00, Volume 321 of mortgages, page 414."

From the report of the official examiner of titles, it appeared that there was a lien upon the property in favor of one Hans Peterson for $1,417.55, a mortgage in favor of Scandinavian American Bank for $6,000, upon the west half of the lots, and a mortgage held by Kate F. Brace for $3,800, upon the east half of the lots. The decree of registration, which was entered on December 5, 1907, found that the mortgage of the Scandinavian American Bank had been fully paid; that Hans Peterson had a lien upon the property for $1,417.55, and adjudged that all other parties defendant and persons unknown claiming the same had no right, title, lien or interest in the property, and enjoined and restrained them from so asserting. There was no direct reference to

the Brace mortgage in the decree.  It is claimed by the respondent, and the claim is not seriously disputed by the appellant, that this was a clerical mistake, overlooked by the official examiner, who approved the form of decree, and by the court when the decree was signed.  The court did, however, adopt as its findings the examiner's report, as shown by the following recital in the decree:

"And the court, having duly considered the said application and the report of the examiner of titles herein, doth adjudge and decree that the said report be and the same is hereby approved and confirmed, and the findings of said examiner of titles are hereby adopted as and made the findings of this court."

Moreover, it is not claimed that the debt was ever paid or the mortgage released, or that Kate F. Brace ever consented that it be not recognized as a lien in the decree.  These things place it beyond cavil that the failure to establish the mortgage as a lien in the decree and enter it as a memorial upon the certificate issued in pursuance of the decree was a mistake.  A court will never be presumed to have done an intentional wrong.  Pursuant to this erroneous decree, the registrar of titles issued a certificate of registration, as provided by the act.  The only memorial thereon was the memorial of the lien in favor of Hans Peterson.  A duplicate certificate was delivered to the land company as owner.

On July 30, 1909, the Superior Land Company executed a deed to the appellant, American Savings Bank & Trust Company, covering all of lots 3 and 4, in block 18, Mercer's addition.  As to whether the appellant at this time had actual notice that Mrs. Brace claimed to have a mortgage for the purchase price upon the east half of the lots, the evidence is conflicting.  The conclusion which we have reached as to the purpose and effect of the Torrens act makes this matter immaterial.  This deed was intended as a mortgage to secure antecedent indebtedness due the appellant from the land company, and it is also claimed to secure

future advances which might be made by the appellant to
the land company.  As to this, however, the evidence is also
conflicting.  With the deed there was delivered to the appel-
lant the owner's duplicate certificate of registration.  At
that time the only memorials upon this duplicate, in addition
to the memorial of the lien of Hans Peterson, was a memorial
of the satisfaction of that lien and a memorial of a mortgage
to the Guardian Life Insurance Company upon the west
half of the lots.  The east half appeared clear of any incum-
brance.  The appellant presented the duplicate certificate
and deed to the registrar of titles and requested that the title
be registered in its name.  The registrar refused to change
the registration, because the taxes on the lots were not paid,
as required by the registration law.  Rem. & Bal. Code,
§ 8860.  Thereafter the appellant held its unregistered deed
and the owner's duplicate certificate as evidence of its claim.
Mr. James P. Gleason, manager of the appellant bank, testi-
fied that he then knew the possession of the duplicate certifi-
cate by the bank was its only security so long as its deed
was unregistered, and that he knew that a surrender of the
certificate to any one else would jeopardize the bank's se-
curity.

In May, 1910, John T. Stimmel, the president of Superior
Land Company, applied to the appellant for the duplicate
certificate of registration for the purpose of submitting it
to the Scandinavian American Bank, which contemplated
making a loan to the land company to take up its indebted-
ness.  Mr. Gleason, the manager of appellant bank, declin-
ing to part with the certificate except upon the receipt of
the Scandinavian American Bank, called Mr. J. F. Lane,
cashier of that institution, by telephone, and explained to
him that he would not let Mr. Stimmel take the certificate
unless Mr. Lane would give a receipt for it and agree to
return it.  Mr. Lane acceded to this, and Mr. Stimmel went
to the Scandinavian American Bank and brought back a
receipt for the certificate.  Thereupon Mr. Gleason delivered

the certificate to Mr. Stimmel.  Mr. Stimmel delivered it to
Mr. Battle, one of the attorneys for the Scandinavian Amer-
ican Bank, for examination, and Mr. John W. Roberts, a
partner of Mr. Battle, who knew of the Brace mortgage, and
who lived neighbor to the Brace's, noticing that there was
no memorial of the Brace mortgage upon the certificate,
called up Mr. Brace, husband of respondent, who attended
to her business affairs, and told him of that fact.  Mr. Brace
took the matter up with Mr. Stimmel, who agreed to make
a new mortgage and file it.

Thereafter, on May 26, 1910, the Superior Land Com-
pany executed to Mrs. Brace another mortgage, bearing the
same date as the original mortgage, upon the two half lots,
and for the same debt secured by the first Brace mortgage,
and on the same day the mortgage, with the owner's dupli-
cate certificate of registration, was presented to the registrar
of titles, who entered thereon a memorial of this mortgage.
The evidence shows that Mrs. Brace paid the taxes upon the
property covered by this mortgage as mortgagee, and in
order to procure its registration.  On December 6, 1910,
she commenced this action to foreclose her mortgage, setting
up each of the mortgages as securing the same debt, and
the taxes paid thereunder, and caused a *lis pendens* to be
filed with the registrar, and a memorial thereof to be entered
upon the register and upon the duplicate certificate, as re-
quired by the registration law (Rem. & Bal. Code, § 8866).
Upon the return of the duplicate certificate of registration
to the appellant, American Savings Bank & Trust Company,
and its discovery that the memorial of the Brace mortgage
had been entered thereon, it presented its deed to the regis-
trar on December 15, 1910, took out a new certificate in its
own name, and intervened in this action, seeking to foreclose
its deed as a mortgage upon the two lots.  The evidence is
undisputed that the respondent had no knowledge of the
deed to the appellant when her new mortgage was filed, and
first learned of it when advised by her attorney, after this

suit was commenced, that appellant was going to intervene.

The trial court entered a decree in favor of the respondent, adjudging her mortgage a first lien upon the east half of lots 3 and 4, block 18, Mercer's addition, superior to that of appellant, and foreclosing it. From that decree, this appeal was taken.

Upon this state of facts, the sole question for our determination is, which of these, the respondent's mortgage, or the appellant's deed as a mortgage, is entitled to priority of lien upon the property covered by both? The appellant contends that, inasmuch as its mortgage deed was dated prior to the second Brace mortgage, it is entitled to priority, though registered subsequently to the registration of the Brace mortgage. The recent decision of this court in *McDonald & Co. v. Johns*, 62 Wash. 521, 114 Pac. 175, 33 L. R. A. (N. S.) 57, is cited as concluding the question. We cannot so read that case as applied to the statute here involved. There is a marked difference of purpose between the old recording statute (Rem. & Bal. Code, § 8781), which is merely a statute of record notice, and the registration or Torrens act, which is a statute of conveyances creating a new system of land titles. Section 44 of the Torrens act (Rem. & Bal. Code, § 8852), is the governing section of that act as to the question of priority here in issue. It defines the effect of the act, or fact, of registration of deeds and mortgages of land which has acquired an established status as registered land by a decree of registration. It reads as follows:

"The owner of registered land may convey, mortgage, lease, charge or otherwise encumber, dispose of or deal with the same as fully as if it had not been registered. He may use forms of deeds, trust deeds, mortgages and leases or voluntary instruments, like those now in use, and sufficient in law for the purpose intended. But no voluntary instrument of conveyance, except a will and a lease, for a term not exceeding three years, purporting to convey or affect registered land, shall take effect as a conveyance, or bind the land; but

shall operate only as a contract between the parties, and as evidence of the authority to the registrar of titles to make registration. The act of registration shall be the operative act to convey or affect the land."

The first sentence of this section does no more than preserve to the owner the right to convey and encumber his land. The second sentence indicates the forms of instruments he may use to evidence the purpose to convey or encumber. That the use of these forms does not constitute an actual conveyance, even *inter partes*, is shown by the next sentence. "But no voluntary instrument of conveyance, . . . purporting to convey or affect registered land, shall take effect or bind the land; but shall operate only as a contract between the parties, and as evidence of authority to the registrar of titles to make registration." This language is so explicit and guarded as to leave no room for doubt as to its meaning. The words "instrument of conveyance" are merely descriptive of the form of the instrument. Such an instrument does not convey, but merely *purports* to convey; that is to say, evidences an intention to convey. "It shall not *take effect* or *bind the land.*" There is no saving clause that it shall take effect or bind the land even as between the parties, or that it shall not bind the land as to *bona fide* purchasers (as is found in the old recording law, Rem. & Bal. Code, § 8781), so as to leave room for an inference that it does bind the land as between the parties. The next clause defines the full force of the instrument as between the parties. "It shall operate *only as a contract* between the parties, and as evidence of authority to the registrar of titles to make registration." This negatives any intention that it shall, in any manner, affect other persons dealing with the owner as to the land. It does no more than confer a power upon the registrar to perform the operative act of conveyance. In order to leave no doubt as to what actually constitutes the conveyance, the closing sentence, without qualification as to parties, or third persons, or *bona fide* purchasers, or pur-

chasers for valuable consideration, declares: "The act of registration shall be the *operative act to convey or affect the land.*"

We cannot conceive of words more apt for the purpose of announcing a single specific concept. The manifest meaning of this section is that the execution of the instrument, notwithstanding it has the form of a conveyance, does no more than create a charge enforcible against the person of the owner, in no manner, and for no purpose, affecting or binding the land, unless, and until, the operative act of conveyance by registration has been performed. Being forced to this conclusion by the plain terms of the statutes, it follows of necessity that neither the instrument held by the appellant, though a deed in form, nor the instrument held by the respondent, though a mortgage in form, became for any purpose an operative deed or mortgage until it was registered. Since the Brace mortgage was first registered, it is the prior lien.

Our construction of this section is in keeping with the obvious purpose of the Torrens act to create an absolute presumption that the certificate of registration in the registrar's office at all times speaks the last word as to the title, thus doing away with secret liens and hidden equities. This is accomplished by the simple plan of making the act of conveyance and the fact of notice by record simultaneous in performance and effect. The Torrens system makes this simultaneous quality inevitable by making both conveyance and notice of record performable, and performable only, by the one act of registration. This is the distinctive feature, the vital principle of the Torrens system. It is the very essence of the plan. For the courts to refuse to recognize and enforce it would be to emasculate the law and, by construction, make it not the Torrens system of land titles, but a mere change in the *form* of the record, a mere modification of the recording act.

But counsel for appellant cites § 30 of the Torrens act

(Rem. & Bal. Code, § 8838), and we might also cite to the
same effect § 49 of the act (Rem. & Bal. Code, § 8857), to
show that the act is intended to protect purchasers for value
and in good faith. That is unquestionably true. But before
one can be a purchaser in good faith, he must be a *purchaser*,
not merely one who has placed himself in position to become
a purchaser. No court has ever held that the preliminary
arrangements to take a deed or mortgage make the pro-
posed grantee a purchaser, innocent or otherwise, until the
deed or mortgage has been actually made, that is, until the
"operative act to convey or affect the land" has been per-
formed. The appellant was not a purchaser until it pro-
cured the performance of the operative act. Until registra-
tion of its deed, the appellant was not a *bona fide* purchaser
for value. Until then, it was in no position to invoke the
protection accorded by §§ 30 and 49 of the act.

Even under the rule announced in *McDonald v. Johns,*
*supra,* if that rule could be held applicable to land registered
under the Torrens system, there would be strong reason that
the Brace mortgage should be held the prior lien. In that
case, both mortgages, as here, were given to secure ante-
cedent debts. The court there held that the mortgage prior
in date of execution was the first lien, though it was the later
in date of record, the ground of the decision being that the
holder of the mortgage last executed was not a *bona fide* pur-
chaser or incumbrancer. The governing principle is there
quoted from the second volume of Pomeroy's Equity Juris-
prudence (3d ed.), § 749, as follows:

"A conveyance of real or personal property as security for
an antecedent debt does not, upon principle, render the trans-
feree a *bona fide* purchaser, since the creditor parts with no
value, surrenders no right, and places himself in no worse
legal position than before."

And, again, the same author says, in § 747:

"Valuable consideration means and necessarily requires un-
der every form and kind of purchase, something of actual

value, capable, in estimation of the law, of pecuniary measurement—parting with money or money's worth, or an actual change of the purchaser's legal position for the worse."

But in the case before us, Mrs. Brace actually parted with money in order to secure her second mortgage. She paid the taxes upon the land in the sum of $341.58, at the time, and in order to procure the performance of "the operative act to convey or affect the land," namely, the registration of her mortgage. This, also, unless her mortgage be held a first lien, placed her in just that much worse pecuniary position than before. She could not pay and recover the taxes as mortgagee under her first mortgage. That had been lost by the error in the decree of registration. She paid this additional sum therefore in order to procure a new mortgage, believing that thereby she was securing a first lien. This belief on her part was induced by the appellant's laches. The appellant had refused to pay these taxes in order to secure a lien on the land, and finally it took advantage of her payment of the taxes, in order to register its mortgage deed and create a lien in its favor. In the meantime, it had relied upon the personal contract of the owner, and on its possession of the owner's duplicate certificate of registration. It relinquished this possession, thus permitting Mrs. Brace to be assured, not only by the original registration certificate, but also by the owner's duplicate thereof, that by paying these taxes she would procure a new mortgage as a first lien. As we have seen, the protection of secret equities is repugnant to the very genius of the Torrens system, but even if this were not so, the appellant, by its laches, under well-settled principles of equitable estoppel, would be precluded from asserting a lien prior to that of the Brace mortgage. It will not do to say that because Stimmel procured the owner's duplicate certificate from the appellant in a wrongful manner, that Mrs. Brace was affected thereby. She had no knowledge of that fact, nor of any claim on the certificate by the appellant.

Moreover, while our reading of the Torrens act makes it unnecessary to invoke any other ground for holding the Brace mortgage a first lien, there are still other strong equitable considerations in her favor. The debt for which both of her mortgages were given was the purchase price of the land. The land had never been paid for. The lien of such a mortgage is entitled to the highest consideration of a court of equity. The new mortgage was in no just sense a mortgage securing an ordinary antecedent debt. It was given to revive a lien which should never have been lost. The first mortgage had been lost through a manifest mistake of the court in entering the decree of registration, and neither she, nor apparently the owner of the land, the Superior Land Company, discovered the mistake until just before the new mortgage was given. The loss of the lien of her first mortgage was, therefore, the result of a mutual inadvertence and mistake of the parties. It has been held by the supreme court of Minnesota, under a statute closely analogous to our Torrens act, that equity will relieve against an erroneous decree of registration on the ground of fraud, even after the period of limitation prescribed by the Torrens act has expired, and so long as the land remains registered in the name of the person guilty of the fraud, if the suit in equity for relief be brought within a reasonable time after the discovery of the fraud. The court held that the mere fact that the statute does not, in express terms, except fraud, does not deprive a court of its universally recognized equitable power to relieve against fraud. *Baart v. Martin*, 99 Minn. 197, 108 N. W. 945, 116 Am. St. 394.

There appears to us no good reason why the same rule should not apply in case of error in the decree of registration by a confessed mutual mistake. An insistence on the perpetuation of an admitted mutual mistake by one of the parties would in itself amount to fraud. The jurisdiction of courts of equity to relieve against mutual mistake, where the relief is invoked as soon as the mistake is discovered, is no

less universally recognized than is the power to relieve against fraud. In the case before us, the land still remained registered in the name of the original registered owner when the mistake in the decree of registration was discovered. While we do not want to be understood as placing this opinion upon that ground, it seems consonant with sound principles that Mrs. Brace, upon discovering the mistake, might have brought an equitable action to reinstate the lien of her original mortgage for the purchase price of the land. The giving of the second mortgage by the owner of the land was a recognition of that right. Had her mortgage thus been reinstated, it would have antedated the appellant's mortgage, and would have been entitled to priority, even under the rule announced in *McDonald v. Johns, supra.* This is manifestly true if the appellant's mortgage deed was given to secure antecedent debts. Every consideration, whether of law or equity, impels us to hold the respondent's mortgage the paramount lien.

The respondent contends that the Torrens act is unconstitutional, that the decree of registration was therefore void, and hence she never lost the lien of her original mortgage. This would, of course, be the result if we held the act unconstitutional. The appellant relies wholly upon the Torrens act, and since we have found that act cannot be so construed as to sustain appellant's contention, we find it unnecessary to pass upon the interesting constitutional question raised.

The judgment is affirmed.

DUNBAR, C. J., MORRIS, CHADWICK, and CROW, JJ., concur.