[No. 25935.   Department One.   May 25, 1936.]

VICTOR F. LARSE, *Individually and as Administrator, et al., Appellants,* v. D. D. CAMPBELL *et al., Respondents.*[1]

*Wright, Jones & Bronson* and *Story Birdseye,* for appellants.

*Landon, Landon & Wheeler (Mason Wheeler,* of counsel), for respondents.

STEINERT, J.—Appellants, as claimants, brought this action (1) to compel the surrender and cancellation of a certificate of title issued to respondent Olson by the registrar of titles for Thurston county, (2) to compel the issuance of a new and different certificate, or, in

[1]Reported in 57 P. (2d) 1246.

the alternative, the reinstatement of a former certificate issued to respondent Campbell and wife, and (3) to have an existing judgment, which claimants had obtained against respondent Campbell and wife and which had thereafter been filed with the registrar, declared to be a first and paramount lien on the land registered. After a trial by the court, a decree was entered denying the relief sought and canceling the registration of claimants' judgment. From that decree, claimants have appealed.

Of the several assignments of error, it is necessary to consider but one, namely, that the court erred in refusing to hold that the challenged certificate was wrongfully procured.

The following is a chronological statement of the facts necessary to be considered in the determination of the question presented: On September 3, 1926, respondent D. D. Campbell and Grace Campbell, his wife, were the owners of a twenty-one acre tract of land, hereinafter referred to as the Black Lake property, in Thurston county. The title to the land had previously been registered under what is commonly known as the "Torrens land act," as provided in chapter 250, Laws of 1907, p. 693, Rem. Rev. Stat.; §§ 10622 to 10726 [P. C. §§ 5725 to 5829], inclusive. The registration on September 3, 1926, was evidenced by certificate of title No, 165 issued to D. D. Campbell and Grace Campbell, his wife.

On or about February 11, 1931, appellants brought suit against Campbell and wife to recover unpaid installments on a real estate contract covering certain land in King county. That case came on for trial in King county on October 26, 1931.

On the day of the trial, Campbell and wife deeded the Black Lake property to respondent Margaret Olson, who was the daughter of Mrs. Campbell and

the step-daughter of Mr. Campbell. At the same time, Campbell and wife deeded to Mrs. Olson and her husband, C. I. Olson, now deceased, other properties not involved in this action. The court found, and we shall assume, that these conveyances to the Olsons were for moneys previously advanced, from time to time, by the Olsons to the Campbells. It is important to note, in this connection, that the deed to the Olsons covering the Black Lake property was not filed or registered under the Torrens land act, but merely for record in the auditor's office, where deeds are ordinarily recorded.

On December 5, 1931, judgment was entered for appellants in their suit against the Campbells. That judgment was paid in full and satisfied of record on December 8, 1931.

On March 23, 1932, Olson and wife reconveyed the Black Lake property, by warranty deed, to Mr. and Mrs. Campbell. That deed was filed and registered under the Torrens land act on March 25, 1932, and was also filed for record in the auditor's office on April 13, 1932.

After the reconveyance to them, Mr. and Mrs. Campbell entered into a written contract with respondent H. M. McKinney whereby the latter agreed to purchase the Black Lake property from the Campbells, on the installment plan. McKinney made a down payment of five hundred dollars and eighteen monthly installment payments of twenty dollars each, and then abandoned the contract. All payments on the contract were made to Mr. Campbell, with the knowledge of the Olsons. Whether or not the contract was ever recorded, does not satisfactorily appear from the record. In any event, it was never filed with the registrar of titles.

On March 7, 1934, appellants instituted a second ac-

tion against respondent Campbell and wife to recover payments then accrued on the real estate contract covering the King county property. Within the next month, Campbell transferred certain properties, not involved in this action, to Mr. and Mrs. Olson, respectively. Then, on April 17, 1934, Mr. and Mrs. Campbell conveyed their interest in the Black Lake property to Mrs. Olson. The deed to the latter property, however, was never filed for registration, nor for record in the auditor's office.

On September 6, 1934, appellants recovered judgment against Campbell and wife on the suit instituted by them in March, 1934.

On November 24, 1934, Mrs. Olson presented to the registrar of titles the deed of *October 26, 1931,* from Mr. and Mrs. Campbell to herself, and the same was registered under the Torrens land act, and certificate No. 205 was thereupon issued to Mrs. Olson.

On May 23, 1935, appellants filed, with the registrar, a transcript of their judgment, and the same was noted as a memorial on certificate No. 205.

Condensing this statement into the salient facts necessary to be kept in mind here, we have the following: The Campbells owned the Black Lake property on October 26, 1931. On that day, they conveyed it, by deed, to Mrs. Olson. That deed was recorded in the auditor's office but was not filed for registration until more than three years later. In the meantime, the Olsons reconveyed the property to the Campbells by deed which was filed for registration and also for record. Thereupon, the Campbells dealt with the property as their own by executing a real estate contract thereon to McKinney and receiving from him all payments made thereunder. The Olsons, after they had reconveyed the property to the Campbells, registered the deed which they had received from the Camp-

bells on October 26, 1931. Subsequently, the appellants had their judgment registered.

The question before us is whether, under the facts stated, the deed of October 26, 1931, could lawfully be registered for the purpose of having a certificate of title issue thereon, after the grantee in the deed had reconveyed the property to the grantor, or, stated in another way, whether certificate No. 205 was wrongfully procured. This involves a consideration of the Torrens land act, and the construction of certain of its provisions.

The act provides, generally, for the optional registration and confirmation of titles to land. It prescribes in detail a method of procedure by which a decree of confirmation and registration shall be obtained, quieting title, and binding the land until the same is withdrawn from registration. Rem. Rev. Stat., §§ 10622-10662 [P. C. §§ 5725-5765]. The act then provides for the issuance of certificates of registration and for methods of voluntary conveyances and involuntary charges. Rem. Rev. Stat., §§ 10663-10710 [P. C. §§ 5766-5813]. It then provides for the creation, administration, and application of an assurance fund to meet losses sustained by persons claiming the benefits of the act. Rem. Rev. Stat., §§ 10711-10716 [P. C. §§ 5814-5819]. It then concludes with a series of provisions relating to infractions of the act and penalties therefor, the disposition of fees derived under the act, and the liberality of construction to be given its terms. Rem. Rev. Stat., §§ 10717-10726 [P. C. §§ 5820-5829].

Section 44, p. 713, of the act, Rem. Rev. Stat., § 10673 [P. C. § 5776], relates to dealings with registered land insofar as wholly voluntary conveyances are concerned. It reads as follows:

"The owner of registered land may convey, mortgage, lease, charge or otherwise encumber, dispose of

or deal with the same as fully as if it had not been registered. He may use forms of deeds, trust deeds, mortgages and leases or voluntary instruments, like those now in use, and sufficient in law for the purpose intended. *But no voluntary instrument of conveyance, except a will and a lease, for a term not exceeding three years, purporting to convey or affect registered land, shall take effect as a conveyance, or bind the land; but shall operate only as a contract between the parties, and as evidence of the authority to the registrar of titles to make registration. The act of registration shall be the operative act to convey or affect the land.*" (Italics ours.)

Section 45, p. 714, of the act, Rem. Rev. Stat., § 10674 [P. C. § 5777], provides that every conveyance, lien, attachment, order, decree, or judgment, which, if recorded with the auditor, would affect the real estate to which it relates, shall likewise, if recorded or filed with the registrar, affect the title to such real estate.

Section 49, p. 716, Rem. Rev. Stat., § 10678 [P. C. § 5781], provides that a new certificate or memorial shall be binding upon the registered owner and upon all persons claiming under him in favor of every *purchaser for value and in good faith*.

Section 67, p. 723, Rem. Rev. Stat., § 10696 [P. C. § 5799], provides that all attachments, liens, and rights of every description, shall be enforced, reduced or discharged by any proceeding or method sufficient in law to enforce, reduce, or discharge like liens on unregistered land.

Section 85, p. 731, Rem. Rev. Stat., § 10714 [P. C. § 5817], provides, among other things, for recovery of damages by such injured person from third persons for their fraud or wrongful act.

Reverting to Rem. Rev. Stat., § 10673 [P. C. § 5776], above quoted, we note that it declares that no voluntary instrument of conveyance purporting to convey or affect registered land shall take effect as a *convey-*

*ance, or bind the land,* but shall operate only as a contract between the parties and as evidence of authority to the registrar to make registration. It is the act of registration that gives operative effect to the conveyance of land. Registration is indispensable, and without it, the land is not conveyed or affected.

Discussing the language of that section, this court said, in *Brace v. Superior Land Co.,* 65 Wash. 681, 688, 118 Pac. 910:

"We cannot conceive of words more apt for the purpose of announcing a single specific concept. The manifest meaning of this section is that the execution of the instrument, notwithstanding it has the form of a conveyance, does no more than create a charge enforcible against the person of the owner, in no manner, and for no purpose, affecting or binding the land, unless, and until, the operative act of conveyance by registration has been performed. . . .

"Our construction of this section is in keeping with the obvious purpose of the Torrens act to create an absolute presumption that the certificate of registration in the registrar's office at all times speaks the last word as to the title, thus doing away with secret liens and hidden equities. This is accomplished by the simple plan of making the act of conveyance and the fact of notice by record simultaneous in performance and effect. The Torrens system makes this simultaneous quality inevitable by making both conveyance and notice of record performable, and performable only, by the one act of registration."

This construction of the act eliminates any and all effect of respondent McKinney's contract upon the title to the land, because the contract was never filed for registration. It also eliminates, for the same reason, the deed of April 17, 1934, from the Campbells to Mrs. Olson.

We come, then, to the deed executed and delivered by the Campbells to Mrs. Olson on October 26, 1931. That deed, it will be remembered, was not filed

for registration until November 24, 1934. In the meantime, that is, on March 23, 19*32*, Mr. and Mrs. Olson had reconveyed the property to the Campbells, who thereafter dealt with it as their own, of which fact the Olsons were fully cognizant. During the time that the Olsons withheld the 1931 deed from registration, it operated simply as a contract between the Campbells and themselves, but in no sense did it operate as a conveyance. The return deed of 1932 from the Olsons to the Campbells was both recorded and registered. As a recorded instrument, it operated as a quitclaim of any interest that the owners might have had by virtue of the former recorded, but unregistered, deed, considered simply as a contract. The *registration* of the 1932 deed operated as a complete conveyance of all the title and interest that the Olsons had by virtue of the earlier deed, whether recorded or registered.

Even if the 1931 deed had been registered at the time of its execution and delivery, manifestly the registration of the 1932 deed would have had the effect of reconveying the title to the Campbells. Certainly, the 1931 deed can have no greater force or effect simply because it was withheld from registration until after the deed of reconveyance had been registered.

Whatever virtue the 1931 deed may have possessed at and prior to March 12, 1932, that was dissipated by the execution, delivery, and registration of the deed of reconveyance. The subsequent registration of the 1931 deed could not revive in the grantee an interest that had passed from her by a properly registered deed. Though the registrar was induced to register the 1931 deed, he registered something that then had no vitality. The procurement of certificate No. 205, based on the 1931 deed, was, therefore, under the circumstances, wrongful.

What the situation might have been if a purchaser

for value and in good faith were claiming under certificate No. 205, we are not called upon to decide. The respondents do not occupy that position, because they were conversant with all the facts.

Appellants' former judgment was properly registered under § 45, p. 714, of the act, Rem. Rev. Stat., § 10674 [P. C. § 5777], and constitutes a valid lien affecting the title to the real estate.

The judgment is reversed, with directions to the trial court to order certificate No. 205 canceled, to order certificate No. 165 reinstated, and to establish the appellants' judgment as a lien on the property, prior and paramount to the claims of the respondents.

MILLARD, C. J., MITCHELL, TOLMAN, and GERAGHTY, JJ., concur.