[No. 32582. Department Two. November 27, 1953.]

GENEVA FINLEY, *Appellant,* v. ALAN C. FINLEY, *Defendant,* ROBERT E. BUNDY, *Respondent.*[1]

[1]Reported in 264 P. (2d) 246.

*Everett O. Butts,* for appellant.

*Kennett, McCutcheon & Soderland* and *Robert C. Wells,* for respondent.

HAMLEY, J.—Plaintiff, Geneva Finley, joined Robert E. Bundy as a defendant in this divorce action, for the purpose of quieting title to certain real property situated in King county, Washington. The trial court entered judgment on the pleadings in favor of Bundy, and ordered plaintiff's ejectment from the premises. Plaintiff appeals.

The facts established by the pleadings are as follows: The property in question was acquired during the marriage of plaintiff and Alan C. Finley, her husband. It was acquired by purchase from Mrs. Finley's sole and separate funds and was therefore her sole and separate property on the date of acquisition.

While the property was the sole and separate property of plaintiff, and without the passing of any consideration to her, it was registered as the community property of herself and her husband under what is commonly known as the "Torrens act," as provided in Laws of 1907, chapter 250, p. 693 (Rem. Rev. Stat., § 10622 *et seq.* [*cf.* RCW 65.12.005]). The pleadings do not disclose whether this was accomplished by the obtaining of an original decree of registration (Rem. Rev. Stat., § 10651 [*cf.* RCW 65.12.175]), or by the issuance of a new certificate of title (Rem. Rev. Stat., § 10680 [*cf.* RCW 65.12.380]) based upon the conveyance to Mrs. Finley, or a conveyance from her to the community. Nor do the pleadings disclose whether Mrs. Finley had actual knowledge that the property had been registered as community

property. There was no allegation of fraud in connection with the registration of the title in the name of the community.

On March 27, 1951, while the property was so registered, Bundy obtained a superior court judgment in King county against Alan C. Finley, individually, and against the marital community. Mrs. Finley was present during the trial of that cause and participated therein. She had knowledge and notice of the entry of the judgment. Execution was then issued on the judgment, and the property in question was sold to Bundy at sheriff's sale on November 3, 1951. This sale was held after due and proper notice, and Geneva Finley had actual notice of the sale. She did not appear at the sale and made no effort to restrain it. The sheriff thereafter issued and delivered a certificate of purchase to Bundy.

The instant action was instituted on November 5, 1952. On November 7, 1952, after the period of redemption had fully expired, Bundy received the sheriff's deed to the property. He thereupon paid all taxes assessed against the property and, on December 12, 1952, obtained an order of court under which the outstanding certificate of title was canceled and annulled and a new one was issued in the name of himself and his wife. During all of this time, Mrs. Finley remained in possession of the property.

On these facts, the trial court concluded that, because the realty was registered in the name of the community, plaintiff could not assert her separate ownership thereof, even as against a person not a purchaser for value or in good faith.

Before considering appellant's assignments of error, it is necessary to notice a preliminary argument advanced by respondent. He contends that, since there are no assignments of error directed against the findings of fact, the latter state the established facts of the case. Rule on Appeal 43, 34A Wn. (2d) (Sup.) 3, is cited in support of this view.

■■ Findings of fact and conclusions of law are not required in the case of a judgment on the pleadings. *Waller v. Heinrichs,* 133 Wash. 7, 233 Pac. 23; *State ex rel. Wash-*

*ington Water Power Co. v. Superior Court,* 41 Wn. (2d) 484, 250 P. (2d) 536. In such case, this court will ascertain the admitted facts by making its own examination of the pleadings. Hence, it was not necessary for appellant to challenge the findings of fact which were entered, and such findings are not controlling here.

Appellant's first two assignments of error raise the question of whether, under the Torrens act, an execution creditor who, at a sale under his own levy, purchases land registered in the name of the judgment debtor, holds the same free from an adverse claim of title which has not been noted in the last certificate of title in the registrar's office.

Those who are entitled to the protection afforded by the Torrens act are designated in Rem. Rev. Stat., § 10654 [*cf.* RCW 65.12.195], quoted below:

"Every person receiving a certificate of title in pursuance of a decree of registration, *and every subsequent purchaser of registered land who takes a certificate of title for value and in good faith,* shall hold the same free from all encumbrances except only such estates, mortgages, liens, charges and interests as may be noted in the last certificate of title in the registrar's office, and except any of the following rights or encumbrances subsisting, namely: [Here immaterial] . . ." (Italics ours.)

It will be observed that this statute sets up two classes of persons receiving a certificate of title who are entitled to hold the same free from all unregistered encumbrances. The first class is limited to persons who have received certificates of title in pursuance of decrees of registration. Respondent does not fall in this class, since he did not receive his title pursuant to such a decree.

The second class of persons who are entitled to hold the same free from all unregistered encumbrances is described by the italicized words. As there indicated, this class is limited to subsequent purchasers of land already registered who take a certificate of title "for value and in good faith." Respondent did not take for value and in good faith, because he was an execution creditor who purchased at his

own levy. See *Vandin v. Henry McCleary Tbr. Co.*, 157 Wash. 635, 289 Pac. 1016, and cases there cited.

Since respondent does not fall within either of the two classes which are afforded protection under the Torrens act, it would appear that he may not here rely upon the registration of title in the name of the marital community.

Some recognition of this view is to be found in *Larse v. Campbell*, 186 Wash. 319, 57 P. (2d) 1246. There is language in that decision (at page 327) implying that a purchaser for value may be entitled to protection under the Torrens act which will be denied to purchasers with knowledge of an adverse claim. Another section of the Torrens act also tends to support the same view. In Rem. Rev. Stat., § 10678 [*cf.* RCW 65.12.370], it is provided that a new certificate or memorial shall be binding upon the registered owner and upon all persons claiming under him in favor of every purchaser "for value and in good faith."

The only case which respondent cites in support of his view that our Torrens act affords protection to one in his position is ·*Brace v. Superior Land Co.*, 65 Wash. 681, 118 Pac. 910. This was a contest between two mortgagees of registered land, each of whom had taken his mortgage to secure an antecedent debt and was therefore not a *bona fide* purchaser. We recognized as the prior lien the mortgage which was first registered, though it was the last executed. The basis of this ruling was that, as to registered land, it is the registration of the title or mortgage, and not its execution or delivery, which operates as a conveyance or encumbrance. See Rem. Rev. Stat., § 10673 [*cf.* RCW 65.12.320].

It was there contended that the Torrens act was intended to protect purchasers for value and in good faith. The court answered that one who has not registered his claim to registered land is not a *purchaser*, and hence not a purchaser for value and in good faith. The result was that the Torrens act was permitted to afford protection to one who was not a *bona fide* purchaser for value as against another who was in the same position.

If that holding is to be considered as controlling prece-

dent, it plainly governs the case before us and entitles respondent to the protection of the act.

■ In our view, however, the *Brace* opinion does not place a proper interpretation upon Rem. Rev. Stat., § 10654, relating to the protection afforded by the act. The question is not, as *Brace* seems to indicate, whether one who *resists* application of the Torrens act is a *bona fide* purchaser for value. Rather, the question is whether the one who *seeks* the protection of that act stands in such a position. If the one who seeks such protection is *not* a *bona fide* purchaser for value, he is not entitled thereto, and it is immaterial whether or not the opposing party purchased for value.

To conclude otherwise is to ignore the provisions of Rem. Rev. Stat., § 10654. This section indicates that protection is afforded *only* to persons taking a certificate pursuant to an original decree, or as a subsequent purchaser for value and in good faith.

■ Rem. Rev. Stat., § 10673, providing that registration is the operative act of executing a deed or mortgage on registered land, does not require a contrary interpretation of Rem. Rev. Stat., § 10654. Statutes must be construed as a whole, and undue emphasis must not be placed on individual sections thereof. *In re Cress,* 13 Wn. (2d) 7, 123 P. (2d) 767. The conclusion which we have reached in this connection gives both of these sections a meaning consistent with the expressed purpose of the act. See *Finnegan v. Gunn,* 207 Minn. 480, 292 N. W. 22, where the Minnesota court expressed the same view.

A review of the authorities indicates that in other states having Torrens acts similar to our own, this same conclusion is reached. Minnesota's act (29 M. S. A., § 508.01 *et seq.*) includes a section almost identical with Rem. Rev. Stat., § 10654. With reference to this section, the Minnesota court said, in *Carl v. DeToffol,* 223 Minn. 24, 25 N. W. (2d) 479:

"By express provision of § 508.25, a certificate of title protects only a 'purchaser . . . who receives a certificate of title in good faith and for a valuable consideration,' and even this protection is limited by numerous exceptions. Hence, the purpose of land title registration is to establish

of record an indefeasible title free from unregistered rights and claims, subject to the exceptions therein enumerated, and to afford protection only ·to purchasers ·in good faith and for value. As between the parties—that is where the titles and rights of bona fide purchasers for value are not involved—the same rules apply in cases where the title is registered as where it is not. *Hammel v. Feigh,* 143 Minn. 115, 173 N. W. 570." (p. 29)

Likewise, the California court held (under a statute similar to ours) that one who accepts a conveyance from the registered owner, with actual notice of an outstanding conveyance to another, is not entitled to rely upon the certificate of title. *Warden v. Wyandotte Sav. Bank,* 47 Cal. App. (2d) 352, 117 P. (2d) 910. See, also, *Killam v. March,* 316 Mass. 646, 55 N. E. (2d) 945. *Entwisle v. Lenz & Leiser,* 14 British Columbia Reports 51; 8 Minnesota L. Rev. 200, 208.

Respondent contends that the effect of such an interpretation is to hold that the Torrens act is no different from the recording statutes. Even if this were true, it would not warrant a disregard of the plain provisions of the statutes quoted above. The fact is, however, that the Torrens act, despite such interpretation, has an effect far different than the recording acts. An extensive list of defects of title which the Torrens act eliminates, and which the recording acts do not eliminate, is to be found in 19 Minnesota L. Rev. 519, 534.

While we thus disapprove the interpretation which *Brace* placed upon the statutes in question, we believe that a correct result was reached. The court there indicated that, even if the Torrens act did not afford protection to one who was not a *bona fide* purchaser, the losing party was guilty of negligence and laches, which, under general principles of equity, entitled the other party to recognition of her mortgage as a prior lien.

Respondent calls attention to Rem. Rev. Stat., § 10651 [*cf.* RCW 65.12.175], which provides that every decree of registration shall be binding and conclusive upon all persons, whether mentioned by name in the application or included

in the blanket reference to "all other persons or parties unknown." That section, however, pertains only to the effect of an original decree of confirmation of title and registration in quieting all prior claims and interests. A person receiving a certificate of title in pursuance of a decree of registration, whether or not he is a purchaser for value and in good faith, takes the land free from all prior encumbrances. This is made clear by the first few words of Rem. Rev. Stat., § 10654, quoted above. Respondent, however, did not acquire his certificate in that way, but by levying on land which was already registered in another. As indicated above, Rem. Rev. Stat., §10654, provides that such a person takes free of encumbrances only if he is a purchaser for value and in good faith.

Respondent further argues that, in any event, appellant is bound by the judgment and decree of confirmation of title in the marital community because she was a party to the proceedings wherein the land was registered in the name of the marital community. We need not consider this contention, because it is not disclosed by the pleadings whether the original registration proceeding was brought by the Finleys, and, if not, whether Mrs. Finley was a party to the proceeding whereby the title to land already registered was transferred to the marital community.

Respondent did not expressly plead, and the trial court did not find nor conclude, that under the circumstances of this case appellant is estopped to deny that the marital community was the owner at the time respondent received the sheriff's deed. Yet respondent calls attention to several facts alleged in the pleadings which seem to have relevance only as to the question of estoppel.

The governing principle to be applied in dealing with the question of equitable estoppel is stated as follows in *Huff v. Northern Pac. R. Co.*, 38 Wn. (2d) 103, 114, 228 P. (2d) 121:

"Where a person with actual or constructive knowledge of facts induces another, by his words or conduct, to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on

such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice [citing authorities]."

■ One fact which is called to our attention for the apparent purpose of establishing an estoppel is that appellant was a party to the action in which respondent obtained his judgment against the marital community, and had actual knowledge of the entry of such judgment.

That was an action for damages and did not involve the property in question. Appellant's participation therein did not provide notice that respondent would assert a judgment lien against the property in question, unless appellant knew that the property was registered in the name of the community.

It is not alleged that appellant had actual knowledge of such registration. Nor did the registration of the title in the name of the marital community charge her with constructive notice, since she asserts the position of a prior title owner and not·a subsequent purchaser or encumbrancer. See Rem. Rev. Stat., § 10674 [cf. RCW 65.12.330]; *Ackerson v. Elliott*, 97 Wash. 31, 165 Pac. 899; *Ryan v. Plath*, 18 Wn. (2d) 839, 140 P. (2d) 968; 137 A. L. R. 268, 276, annotation.

The factor of actual or constructive knowledge, necessary in order to establish an equitable estoppel, is therefore not present in connection with the circumstances just considered. We do not decide whether, in the event appellant had actual knowledge of such registration, her participation in the damage suit, coupled with delay in filing this action to quiet title, would work an estoppel.

In so far as the pleadings reveal, the first time appellant had actual knowledge that respondent intended to assert a judgment lien against the property in question was when she received notice of the sheriff's sale. This sale was held on November 3, 1951. By the time appellant received such notice, most of the necessary expenses in connection with such sale must have already been incurred by respondent.

██ Upon receiving this notice, appellant could have asserted her adverse claim prior to the sheriff's sale by following the statutory method. Rem. Rev. Stat., § 573 *et seq.* [*cf.* RCW 6.20.010 *et seq.*]. But this is not an exclusive remedy, and such an adverse claim may be asserted by bringing an action to enjoin the execution sale (*Bramel v. Ratliff*, 54 Wash. 581, 103 Pac. 817), or to quiet title (*Sheffield Co. v. R. Hoe & Co.*, 173 Wash. 489, 23 P. (2d) 876).

██ Appellant followed the latter course. The one-year period of redemption expired on November 2, 1952. Appellant's complaint was verified on October 31, 1952, and filed on November 5, 1952. The record does not reveal when it was served upon respondent. In any event, the action had been instituted before respondent received the sheriff's deed on November 7, 1952, and before respondent took any of his subsequent steps, including payment of taxes, resulting in issuance to him of a new certificate of registration.

None of the expenses incurred or actions taken by respondent after the filing of this quiet title action could lead to an estoppel, for they were not incurred or taken in reliance upon the implied acquiescence resulting from appellant's silence and inaction. This leaves, as the only possible basis of equitable estoppel, the delay occasioned by respondent due to the fact that appellant did not institute this action more promptly after receiving notice of the sheriff's sale.

██ Under some circumstances, such a delay might well give rise to an equitable estoppel. In this case, however, the facts before us are meager, the trial court has not disposed of the case on the basis of estoppel, and the effect of declaring an estoppel is to divest appellant of her asserted interest in land. It has long been the rule of this court that the doctrine of estoppel *in pais* should not be too readily extended when the effect of it is to divest men of their estates in lands. *Murray v. Briggs*, 29 Wash. 245, 259, 69 Pac. 765. In keeping with that rule, we have required very clear and cogent evidence to estop an owner out of a legal title to real property. *Tyree v. Gosa*, 11 Wn. (2d) 572, 119 P. (2d) 926;

766

*Mugaas v. Smith,* 33 Wn. (2d) 429, 206 P. (2d) 332, 9 A. L. R. (2d) 846.

These considerations lead us to conclude that the judgment on the pleadings in this case cannot be upheld by application of the doctrine of equitable estoppel.

Since appellant will have a new opportunity to file amended pleadings, it is not necessary to consider the assignment of error based on the denial of her motion for leave to file her first amended reply.

The judgment is reversed and the cause remanded, with directions to deny the motion for judgment on the pleadings.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and FINLEY, JJ., concur.