[No. 4836–II.  Division Two.  April 27, 1981.]

JILL A. FARVER, *Appellant,* v. THE DEPARTMENT
OF RETIREMENT SYSTEMS, ET AL, *Respondents.*

*Franklin K. Fogg,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Timothy Malone* and *Matthew J. Coyle, Assistants,* and *Charles M. Granoski,* for respondents.

REED, C.J.—Plaintiff Jill Berling Farver appeals from an order granting summary judgment in favor of defendants John and Betty Berling. The principal issue presented on appeal is whether a wife's interest in her husband's state pension[1] is inheritable. We hold it is and, accordingly, reverse the trial court's order.

---

[1]For the sake of clarity and in light of the facts of this case, we generally will refer in this opinion to the member of the retirement system as the husband and to the spouse who is not a member of the system as the wife. Obviously, the rule we announce will be equally applicable in a case in which the member is the wife.

Furthermore, in our analysis we occasionally will make reference to community property interests in pensions, although there are no community property interests at issue in this case. We do so because we believe the same rule of inheritability should be applicable when a wife dies owning a community property interest in her husband's pension as when a woman dies owning a separate property interest in her former husband's pension.

Phyllis and John Berling were married in 1944. In 1974 John petitioned for dissolution of the marriage. At that time John had worked for the Washington State Patrol for 22 years, and his pension rights in the State Patrol Retirement System constituted the most valuable marital asset. In the course of dividing the marital property, the court awarded three–fourths of the contingent pension payments to John and one–fourth to Phyllis, with an unchallenged proviso that any additional benefits accruing in the event John decided to work past his earliest permissible retirement date in 1977 would be shared equally. Under the terms of the decree, payments to Phyllis were to begin only after John retired and were to continue only so long as he continued to receive benefits. John married his present wife, Betty, in 1975 and continued to work for the State Patrol until 1979.

In 1978 Phyllis died intestate, survived by two children from her marriage to John. Jill Berling Farver, their married daughter, was appointed administratrix of her mother's estate. Her inventory of the estate included her mother's interest in the State Patrol pension. Probate proceedings were completed in May 1979. As part of the distribution of estate assets, Phyllis' interest in the pension was assigned in equal shares to Farver and her brother, Jim. When John Berling retired in June 1979, however, the Department of Retirement Systems, relying on RCW 43.43.310, began paying the full amount of the pension benefits to him. Berling refused to pay any portion of his pension benefits to his daughter after he received them.

Farver then commenced this action against the Department and the Berlings, seeking a judgment declaring her rights in the pension and ordering the Department to pay her share directly to her. Both Farver and the Berlings moved for summary judgment. The trial court entered an order denying Farver's motion and granting the Berlings' motion, thereby necessarily rejecting any claim against the Department, although no judgment was ever entered in favor of the Department.

No Washington appellate decision has addressed the precise issue presented in this case. Washington courts have recognized, however, that a pension constitutes a property right in the nature of deferred compensation, even though benefits are not presently available. *Wilder v. Wilder,* 85 Wn.2d 364, 534 P.2d 1355 (1975); *In re Marriage of Pea,* 17 Wn. App. 728, 566 P.2d 212 (1977); *DeRevere v. DeRevere,* 5 Wn. App. 741, 491 P.2d 249 (1971). As such, it is community property to the extent that benefits are earned during marriage and is subject to equitable distribution in a dissolution proceeding, whether characterized as separate or community property. *Wilder v. Wilder, supra; Payne v. Payne,* 82 Wn.2d 573, 512 P.2d 736 (1973); RCW 26.09.080; RCW 26.16.010–.030. Thus, Farver argues that general rules governing inheritability of property should apply to a pension that is either community property, thereby owned in part by a wife at her death, or separate property of a former wife, having been distributed to her as part of a property settlement in a dissolution. *See* RCW 11.04.015. In particular, Farver contends the analogy between life insurance proceeds and pension benefits is so close, *see DeRevere,* 5 Wn. App. at 745–46, that the same rules of inheritability should govern both.[2]

In response, the Berlings contend that a state pension is a unique form of property that should not be subject to general rules of inheritability. Relying principally on *Waite v. Waite,* 6 Cal. 3d 461, 492 P.2d 13, 99 Cal. Rptr. 325 (1972), they argue that permitting inheritance of a wife's interest in her husband's pension would be inconsistent with the legislature's intent in establishing state retirement systems and that the wife's interest therefore must terminate at her death. We are unpersuaded, however, by the

---

[2]Washington courts have long recognized that proceeds of a life insurance policy are community property to the extent that the premiums have been paid with community funds, *Small v. Bartyzel,* 27 Wn.2d 176, 177 P.2d 391 (1947), and that when a noninsured spouse dies owning a community property interest in a policy, that interest passes to the decedent's successors, *In re Estate of Leuthold,* 52 Wn.2d 299, 324 P.2d 1103 (1958).

reasoning underlying the *Waite* decision.

In *Waite*, the husband had participated during marriage in the state judges' retirement plan. As part of a comprehensive dissolution property settlement, the trial court awarded to the wife or her devisees or heirs the entire community interest in her husband's retirement benefits. On appeal, the California Supreme Court held that although the pension benefits were community property, the trial court erred in awarding the benefits alternatively to the wife's devisees or heirs. The court based its conclusion on what it perceived as the legislative intent behind the California pension statute—to provide benefits for employees and dependents, but not to others. After outlining the objectives of public pension programs and explaining the benefits provided under the judges' retirement plan, the court stated:

> The state's concern, then, lies in provision for the subsistence of the employee and his spouse, not in the extension of benefits to such persons or organizations the spouse may select as the objects of her bounty. Once the spouse dies, of course, her need for subsistence ends, and the state's interest in her sustenance reaches a coincident completion. When this termination occurs, the state's concern narrows to the sustenance of the retired employee; its pension payments must necessarily be directed to that sole objective.
>
> . . .
>
> We conclude that the statutory design for judges' pensions negates the spouse's contention that her legatees should inherit pension payments payable for the balance of the judge's life. Whatever community interest the wife may claim, it cannot transcend the legislation upon which the pension itself rests. The legislation grants to the wife, not an inheritable legacy, but a continuing economic protection for her lifetime, a state–secured provision for subsistence.

*Waite,* 6 Cal. 3d at 473–74.[3]

---

[3]The California courts subsequently have extended *Waite's* "terminable interest" rule both to federal pension plans, *In re Marriage of Fithian,* 10 Cal. 3d 592, 599–600, 517 P.2d 449, 453–54, 111 Cal. Rptr. 369, 373–74 (1976); *In re Marriage*

■ To apply the *Waite* rule to this case and thus hold that Phyllis Berling's interest in her former husband's pension terminated at her death would require us to conclude that the statutes governing the State Patrol Retirement System, RCW 43.43.120–.320, somehow have restricted the operation of RCW 11.04.015 (governing descent and distribution of property).[4] *See* Reppy, *Community and Separate Interests in Pensions and Social Security Benefits After Marriage of Brown and ERISA,* 25 U.C.L.A. L. Rev. 417, 470–74 (1978). Neither the language of the statutes nor the legislative history, however, contains a clear expression of an intent to partially amend or repeal RCW 11.04.015. Nevertheless, the Berlings argue that, read in concert, these statutes reveal that the legislature in establishing the retirement plan had no intention to permit retirement ben-

---

*of Martin,* 50 Cal. App. 3d 581, 585, 123 Cal. Rptr. 634, 636 (1974); *Bensing v. Bensing,* 25 Cal. App. 3d 889, 893, 102 Cal. Rptr. 255, 257 (1972), and to private pension plans, *In re Estate of Allen,* 108 Cal. App. 3d 614, 166 Cal. Rptr. 653 (1980); *In re Marriage of Lionberger,* 97 Cal. App. 3d 56, 71–72, 158 Cal. Rptr. 535, 543–44 (1979); *see In re Marriage of Borges,* 83 Cal. App. 3d 771, 774, 148 Cal. Rptr. 118, 119–20 (1978).

[4]RCW 11.04.015 reads in pertinent part:
Descent and distribution of real and personal estate. The net estate of a person dying intestate, or that portion thereof with respect to which the person shall have died intestate, shall descend subject to the provisions of RCW 11.04.250 and RCW 11.02.070, and shall be distributed as follows:
. . .
(2) Shares of others than surviving spouse. The share of the net estate not distributable to the surviving spouse, or the entire net estate if there is no surviving spouse, shall descend and be distributed as follows:
(a) To the issue of the intestate; if they are all in the same degree of kinship to the intestate, they shall take equally or if of unequal degree, then those of more remote degree shall take by representation.
RCW 11.02.005(2) defines "net estate" as
the real and personal property of a decedent exclusive of homestead rights, exempt property, the family allowance and enforceable claims against, and debts of, the estate.
In addition, when a wife dies owning a community property interest in her husband's pension, adoption of the *Waite* rule would require us to conclude that the retirement system statutes have similarly modified RCW 26.16.010–.030 (defining separate and community property) or RCW 11.02.070 (governing disposition of community property at death).

efits to become part of the estate of a nonmember spouse and thus potentially transferable to a person who is not a dependent of the retirement system member. This argument essentially calls upon us to declare that the retirement system statutes have partially repealed or amended the intestate succession statute *by implication*. We cannot find such a partial repeal or amendment by implication here, however, because both statutory schemes, together with Washington case law making state pensions divisible as property in a dissolution proceeding, can be reconciled and given effect by holding the interest in the pension to be subject to testamentary disposition. *See, e.g., Stephens v. Stephens,* 85 Wn.2d 290, 295, 534 P.2d 571 (1975); *Misterek v. Washington Mineral Prods., Inc.,* 85 Wn.2d 166, 168, 531 P.2d 805 (1975); Reppy, *supra* at 472–74.

Furthermore, as a matter of property law and simple logic, we can see no significant difference between pension benefits and the salary paid to a married state employee. No one would seriously dispute a wife's power to bequeath half of any accrued but unpaid salary when she predeceases her employee husband. Similarly, a wife clearly would have testamentary power over half of a private annuity purchased by her husband with his community earnings and payable over his life. *See* Reppy, *supra* at 471. Absent a clear expression of legislative intent to the contrary, the same rule should apply to a state pension.

As a final argument, the Berlings suggest that RCW 41.04.320,[5] enacted in 1979, supplies the requisite expres-

---

[5]RCW 41.04.320 reads:

"Payment of retirement benefits pursuant to court decree or order of dissolution or legal separation—Effect of death of recipient nonmember spouse or ex-spouse. All payments made to a nonmember spouse or ex-spouse *pursuant to the provisions of this amendatory act* shall cease upon the death of such a nonmember spouse or ex-spouse. Upon such a death, *the department is hereby authorized and directed to pay* to the member his or her full monthly entitlement of benefits. [1979 1st ex.s c 205 § 11.]" (Italics ours.) The phrase "this amendatory act" refers to Laws of 1979, 1st Ex. Sess., ch. 205, p. 1788. Section 8 of the act is codified at RCW 43.43.310(2), and reads: "Benefits under this chapter shall be payable to a spouse or ex-spouse to the extent expressly provided for in any court

sion of legislative intent that Phyllis Berling's interest should terminate at her death. They contend that this statute merely articulates the previously implied legislative policy to make retirement benefits available only to former state employees and their dependents. Even if we were to interpret RCW 41.04.320 to terminate the wife's interest at her death, however, RCW 41.04.330[6] clearly provides that the 1979 amendatory act containing RCW 41.04.320 shall apply only to dissolution decrees entered after May 25, 1979. The decree in the instant case was entered in 1974, well before the effective date of the act.

Moreover, we are unconvinced that RCW 41.04-.320 was intended to address the nature of the interest owned by a nonmember spouse. Although the legislative history is not entirely clear, the 1979 amendatory act, introduced as Senate Bill 2378, apparently contained only 10 sections originally and was designed to permit courts to order the Department of Retirement Systems to make direct payments to spouses or ex–spouses of retirement system members. Senate Journal, 46th Legislature (1979), at 205–06. The bill was necessary because the Department and its predecessor agencies, relying on exemption provisions such as that contained in RCW 43.43.310(1),[7] had

___

decree of dissolution or legal separation or in any court order or court–approved property settlement agreement incident to any court decree of dissolution or legal separation."

[6]RCW 41.04.330 reads:
"Payment of retirement benefits pursuant to court decree or order of dissolution or legal separation—Application of act. The provisions of this 1979 amendatory act shall apply only to court decrees of dissolution or legal separation and court–approved property settlement agreements entered after May 25, 1979, and only to those persons who have actually retired. [1979 1st ex.s. c 205 § 12.]"

[7]RCW 43.43.310(1) reads:
The right of any person to a retirement allowance or optional retirement allowance under the provisions hereof and all moneys and investments and income thereof are exempt from any state, county, municipal, or other local tax and shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or the insolvency laws, or other processes of law whatsoever and shall be unassignable except as herein specifically provided.

consistently refused to honor attempted garnishments of retirement benefits of former spouses seeking to satisfy property settlements or alimony or child support awards. Section 11 of the act, which was codified as RCW 41.04.320, apparently was a floor amendment introduced by Senator Vognild. Senate Journal, 46th Legislature (1979), at 1807. RCW 41.04.320 provides that payments "pursuant to the provisions of this amendatory act" shall cease upon the death of a nonmember spouse or ex–spouse. The statute further provides that *the Department* is authorized and directed to pay full benefits to the retirement system member upon such a death. Construing RCW 41.04.320 in the context of the 1979 amendatory act as a whole and bearing in mind the overall purpose of the act, *see Markham Advertising Co. v. State,* 73 Wn.2d 405, 439 P.2d 248 (1968); *Martin v. Aleinikoff,* 63 Wn.2d 842, 389 P.2d 422 (1964); *Finley v. Finley,* 43 Wn.2d 755, 264 P.2d 246, 42 A.L.R.2d 1379 (1953), we believe the legislature intended only that the *direct* payments by the Department to non-member spouses or ex–spouses referred to in sections 1 through 10 of the amendatory act should cease upon the death of the spouse. Accordingly, we hold that Phyllis Berling's interest in her former husband's state pension survived her death and passed to her heirs at law.[8]

---

In *Boronat v. Boronat,* 13 Wn. App. 671, 537 P.2d 1050 (1975), this court construed a similar provision in a former version of RCW 41.40.380, holding that a husband's contributions to a state retirement fund, while held by the retirement system, were not subject to garnishment by his former wife seeking to recover sums owed her for alimony, child support, a property settlement, and attorney fees.

[8]We recognize that the rule we announce may lead to anomalous results in some cases. For instance, the Berlings note that Phyllis could have remarried and left all her property to her surviving spouse, with whom John Berling would then have been forced to share his pension. Trial courts can avoid such incongruous results in dissolution cases, however, by awarding the wife an interest in the pension that specifically terminates at her death, and nothing we have said is intended to disapprove of such an approach as part of an overall equitable property settlement. *See Kruger v. Kruger,* 139 N.J. Super. 413, 420–21, 354 A.2d 340, 344–45 (1976). Unfortunately, this approach is unavailable in the instant case. In

In view of our disposition of the inheritability issue, we must address a second issue relating to the means by which Farver is to receive her share of the pension benefits. At the trial court level and now on appeal, Farver has argued that the Department must pay directly to her that portion of each monthly retirement payment representing her ownership interest. Without citing authority, she contends it is unfair to force her to depend on the cooperation of her father in securing her rightful share of the pension benefits. The trial court had no occasion to decide this issue because it concluded that Farver had no interest in the pension. As explained below, we believe the issue should be resolved by determining the meaning of the dissolution decree that awarded Phyllis Berling an interest in John Berling's future retirement benefits.

We find the dissolution decree to be ambiguous in regard to the means by which the pension benefits were to be distributed. The decree reads in pertinent part:

[I]t is hereby

. . .

ORDERED, ADJUDGED AND DECREED, that the property rights in, under and through the retirement plan or benefits from [John's] employment with the Washington State Patrol, be and they are hereby awarded three–fourths to [John] and one–fourth to [Phyllis]; and *any payments from the retirement plan,* whether periodic, lump sum or otherwise, *shall be paid to [John] and [Phyllis]; in that proportion.* However, [John] alone shall have the right to determine, within the limits of the plan, when and in what form payments should be made from the plan—and [John] alone shall have the right to decide when he shall retire, and consequently start retirement benefit payments; it is further

ORDERED, ADJUDGED AND DECREED, that the payments to [Phyllis], whether periodic, lump sum or otherwise,

the posture we find this case, we believe the result we have reached is an inevitable consequence of previous decisions treating pensions as community property and as subject to equitable division in dissolutions. *See Ramsey v. Ramsey,* 96 Idaho 672, 683, 535 P.2d 53 (1975) (McQuade, C.J., dissenting); *id.* at 683–84, 535 P.2d at 64–65 (Bakes, J., dissenting).

under the retirement plan benefits need not be paid and are not due until [John] retires. If [John] does not retire during March, 1977, at which time his retirement vests, and continues in the employment of the Washington State Patrol and consequently acquires additional retirement benefits, those additional retirement benefits shall be divided equally between the parties; it is further

ORDERED, ADJUDGED AND DECREED, that [*John's*] *obligation to make payments from his retirement income* shall continue only so long as he receives such benefits;
. . .

(Italics ours.) The first paragraph quoted above seems to call for direct payments from the retirement plan to Phyllis. The third paragraph, however, seems to call for payments from John to Phyllis as he receives the benefits.

Interpretation of a dissolution decree is not a question of fact, but is a question of law for this court. In construing an ambiguous dissolution decree, an appellate court seeks to ascertain the intention of the court which entered it. *Hammond v. Hammond,* 26 Wn. App. 129, 611 P.2d 1352 (1980); *Leavy, Taber, Schultz & Bergdahl v. Metropolitan Life Ins. Co.,* 20 Wn. App. 503, 581 P.2d 167 (1978); *see Callan v. Callan,* 2 Wn. App. 446, 468 P.2d 456 (1970); *In re Marriage of Verner,* 77 Cal. App. 3d 718, 143 Cal. Rptr. 826 (1978).

Although the decree in this case could be read to require the Department to make direct payments at least to Phyllis, *see Stone v. Stone,* 450 F. Supp. 919, 922 n.6 (N.D. Cal. 1978), *aff'd,* 632 F.2d 740 (9th Cir. 1980), we think a more reasonable interpretation is that the decree required only that John pay part of his pension benefits to Phyllis as he received them. We construe the decree in this manner for the following reasons. First, our review of the decree in its entirety together with the accompanying findings of fact and conclusions of law reveals that the State Patrol Retirement Board, the body charged with administering the State

Patrol Retirement System at the time of the decree,[9] is not mentioned even once in those documents. Had the court intended to order direct payments to Phyllis, it presumably would have incorporated in the decree an explicit provision ordering the board to do so. Second, nothing in the record suggests that either John or Phyllis even attempted to join the board as a party to the dissolution proceedings. Third, given the statutory and decisional law existing at the time of the decree, we believe the trial court would have entertained serious doubts about its authority to order direct payments to Phyllis. Divorce is a statutory proceeding and the jurisdiction of the court is limited by applicable legislative enactments. The court does not have any authority that cannot be inferred from a broad interpretation of the act in question. *Arneson v. Arneson,* 38 Wn.2d 99, 227 P.2d 1016 (1951); *Mallen v. Mallen,* 4 Wn. App. 185, 480 P.2d 219 (1971). In 1974 RCW 26.09.130 permitted the court to order an assignment of earnings or trust income to guarantee *support or maintenance* payments. RCW 26.09 made no provision for a similar procedure in regard to property settlements. RCW 43.43.310 at that time provided that a retirement allowance was not subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, "or other processes of law whatsoever" and was "unassignable except as herein specifically provided." Laws of 1965, ch. 8, § 43.43.310. In 1974 this statute contained no exception for decrees of dissolution such as that now codified at RCW 43.43.310(2). Washington case law also would have cast some doubt on the validity of direct payments. *See Pittman v. Pittman,* 64 Wn.2d 735, 393 P.2d 957 (1964); *Boronat v. Boronat,* 13 Wn. App. 671, 537 P.2d 1050 (1975). Viewing the decree as a whole and considering the surrounding circumstances, we do not believe the court intended to order direct payments to Phyllis out of the retirement fund. *See Brueck v. Winters Nat'l Bank &*

---

[9]RCW 41.50.030, enacted in 1976, transferred the duty of administering the retirement system to the Department of Retirement Systems.

*Trust Co.*, 38 N.E.2d 422 (Ohio App. 1941). Because Farver can inherit no greater rights than her mother owned, she must seek other means to secure payment of her share of the pension benefits.[10]

The summary judgment in favor of the Berlings is reversed and the case is remanded for entry of judgment in favor of Farver against the Berlings, and in favor of the Department of Retirement Systems against Farver.

PEARSON and PETRIE, JJ., concur.

Reconsideration denied May 21, 1981.

Review granted by Supreme Court July 27, 1981.

---

[10]We wish to emphasize that we have resolved this issue solely on the basis of our interpretation of the dissolution decree. We therefore have not decided the *authority* of a trial court to order the Department, as part of a property settlement, to make direct payments to ex-spouses or their successors or assignees. *See* RCW 41.04.320; 41.04.330; 43.43.310(1)-(2).