[No. 5590-2-II. Division Two. March 16, 1983.]

ANNA M. BARROS, *Appellant,* v. RITA M. BARROS,
*Respondent.*

*Robert B. Taub,* for appellant.

*M. H. Hemmen,* for respondent.

WORSWICK, J.—Anna Barros, first wife of decedent John Barros, appeals dismissal of her complaint in which she claimed a one–half interest in a Survivor Benefit Plan available to spouses of military retirees and received by John's second wife, Rita. Two significant issues are presented: whether the trial court erred in concluding that Anna has no property interest in the annuity; and whether federal law preempts Washington community property law as it might otherwise apply to the annuity. Although we hold that the trial court erred in deciding the first issue adversely to Anna, we also hold that federal law precludes her from claiming an interest. Therefore, we affirm.

Anna and John were married from February 14, 1955, to March 1, 1973. When they divorced they stipulated to a complete list of community assets; among the items included was John's "military retirement fund." Both the findings of fact and conclusions of law listed the retirement fund as community property. The trial judge's oral opinion indicated that the military benefits were to be awarded to John; however, the divorce decree made no disposition of the retirement fund. Rita was married to John from March 6, 1973, to his death on July 29, 1976. Since John's death, Rita has received monthly annuity payments pursuant to the military Survivor Benefit Plan (SBP). 10 U.S.C. §§ 1447 *et seq.* (Supp. 5, 1975).

Anna contends the trial court erred in concluding that she has no property interest in the annuity under Washington law. We agree. At John's death, the SBP allowed a service member to provide an annuity for his

surviving spouse or children. 10 U.S.C. § 1448 (Supp. 5, 1975). While the annuity is not technically life insurance, it is similar in nature. Under Washington law, therefore, community property principles governing life insurance ownership apply. Generally, ownership of a life insurance policy or the proceeds therefrom are separate or community property in proportion to the percentage of the total premiums which have been paid with separate or community funds. *Estate of Madsen v. Commissioner*, 97 Wn.2d 792, 650 P.2d 196 (1982). With certain exceptions not pertinent here, a community which pays a portion of the premiums (the husband's employer paying the other portion) on a group life, disability or medical insurance policy, even though no cash value is developed thereby, acquires a property right characterized as an inchoate interest in the insurance proceeds properly distributable in a divorce action. *Chase v. Chase*, 74 Wn.2d 253, 444 P.2d 145 (1968).

The SBP annuity is funded partially by the government and partially by a reduction in the member's monthly retirement pay. 10 U.S.C. § 1452 (Supp. 5, 1975). At the time John divorced Anna he was receiving reduced retirement pay.[1] John and Anna agreed in their divorce action that John's military retirement fund was community property. Therefore, while John was retired and still married to Anna, community funds were being used to pay for the annuity.[2]

██ Community property not disposed of in a dissolution

---

[1]The record does not directly state that John and Anna were participating in the annuity plan while married. However, they must have been, because the decision not to participate must be made during the first month of receiving retirement pay, the decision is irrevocable, and Rita received an annuity. *See* 10 U.S.C. § 1448(a) (Supp. 5, 1975).

[2]Rita contends that John's retirement pay was not community property, and therefore no community funds were invested in the annuity. She cites *Myser v. Myser*, 21 Wn. App. 925, 589 P.2d 277 (1978), *In re Marriage of Hagy*, 20 Wn. App. 642, 581 P.2d 598 (1978), and *Martin v. Martin*, 20 Wn. App. 686, 581 P.2d 1085 (1978), as support. All three cases are distinguishable from the case at bar because they did not involve a stipulation that the retirement pay was community property.

is owned thereafter by the former spouses as tenants in common. *Yeats v. Estate of Yeats,* 90 Wn.2d 201, 580 P.2d 617 (1978). Neither John's retirement pay nor the annuity was disposed of in the divorce decree; therefore, John and Anna owned them as tenants in common.

 Anna contends the trial court erred in concluding that federal law preempts Washington law and disallows her claim. We disagree. Generally, state law rather than federal law governs the subject of domestic relations. *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 59 L. Ed. 2d 1, 99 S. Ct. 802 (1979). Whether federal legislation preempts state family law depends upon whether the right asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition. *McCarty v. McCarty,* 453 U.S. 210, 221, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981). Anna's claim conflicts with express terms of the SBP. A service member can provide the annuity only for his dependent children, provide the annuity for his wife, or elect not to participate in the plan at all. In any case, the decision is solely that of the service member. 10 U.S.C. §§ 1448(a), 1450 (Supp. 5, 1975). In addition, as the Supreme Court noted in *McCarty*:

> An annuity under either plan [Retired Serviceman's Family Protection Plan or SBP] is not "assignable or subject to execution, levy, attachment, garnishment, or other legal process." 10 U. S. C. § 1440 and § 1450(i). Clearly, then, a spouse cannot claim an interest in an annuity not payable to him or her on the ground that it was purchased with community assets. *See Wissner [v. Wissner,* 338 U.S. 655, 659, 94 L. Ed. 424, 70 S. Ct. 398 (1949)].

*McCarty,* 453 U.S. at 226 n.18.

The Uniformed Services Former Spouses' Protection Act, passed in September 1982, also manifests congressional intent to disallow community property claims to the annuity.[3] The act was designed in part to remove the effect

---

[3]The act's amendments to the SBP apply as follows:

of *McCarty* by permitting federal and state courts to apply community property laws to military retirement pay in community property jurisdictions. *See* S. Rep. No. 502, 97th Cong., 2d Sess. 1–5, *reprinted in* 1982 U.S. Code Cong. & Ad. News 1596. However, the act does not alter *McCarty*'s statements regarding annuities. 10 U.S.C. § 1448(b) as amended reads:

> (2) A person who is married or has a dependent child may elect to provide an annuity to a former spouse instead of providing an annuity to a spouse or dependent child if the election is made in order to carry out the terms of a written agreement entered into voluntarily with the former spouse (without regard to whether such agreement is included in or approved by a court order).

Act of Sept. 8, 1982, Pub. L. No. 252, § 1003(b)(2), 96 Stat. 735. 10 U.S.C. § 1450(f) as amended reads:

> (3) Nothing in this chapter authorizes any court to order any person to elect under section 1448(b) of this title to provide an annuity to a former spouse unless such person has voluntarily agreed in writing to make such election.

Act of Sept. 8, 1982, *supra,* § 1003(d), 96 Stat. 736. The act neither requires nor allows states to apply community property law to the SBP. It merely allows a member to provide an annuity for his former spouse. The amendments did not change section 1450(i), which provides that an annuity is not assignable or subject to execution, levy, attachment, garnishment or other legal process. The legislative history of the act never spoke of eliminating the effect of *McCarty* on annuities but only of eliminating its effect on retirement pay. The history states:

> This amendment to subsection 1448(b) of title 10 will give increased flexibility to certain persons eligible to participate in the Plan and will permit those persons to

---

"The amendments made by section 1003 of this title shall apply to persons who become eligible to participate in the Survivor Benefit Plan provided for in subchapter II of chapter 73 of title 10, United States Code, before, on, or after the effective date of such amendments." Act of Sept. 8, 1982, Pub. L. No. 252, § 1006(c), 96 Stat. 737.

provide a measure of financial protection to a former spouse in the event of termination of a marriage. At the same time, the amendment continues the basic concept of SBP that an election to provide any annuity is strictly the option of the person eligible to participate in that Plan. That is, no person could be required to provide an annuity to a former spouse.

S. Rep. No. 502, 97th Cong., 2d Sess. 24, *reprinted in* 1982 U.S. Code Cong. & Ad. News 1596, 1619.

In view of the express language of the amendment and the accompanying legislative history, it is clear that Congress has not evidenced an intent to change the effect of *McCarty* on the SBP or to allow states to apply community property laws to the distribution of the annuities. Anna's claim conflicts with the express terms of federal law and recognition of her claim here would sufficiently injure the objectives of the SBP program to require nonrecognition. *See McCarty,* 453 U.S. at 232–35; *Wissner v. Wissner,* 338 U.S. 655, 659, 94 L. Ed. 424, 70 S. Ct. 398 (1949). Therefore, the trial court did not err in dismissing Anna's complaint.

Anna contends that while a state court may not compel the federal authorities to distribute the annuity, a state court may award property from the annuity, citing *Farver v. Department of Retirement Sys.,* 29 Wn. App. 138, 629 P.2d 903 (1981). Anna's contention fails for two reasons. First, it misconstrues congressional intent regarding the SBP. Congress did not merely prohibit federal authorities from distributing the annuity to a nonbeneficiary. Rather, it specifically provided that the annuity is not to be subject to execution, levy, attachment, garnishment or other legal process. In other words, Congress has said that Anna's lawsuit must fail. Second, Anna's contention misconstrues *Farver. Farver* dealt only with the character of the community interest in a state employee's pension under state law. No federal legislation or policy was involved. *Farver* is clearly distinguishable.

■■ Finally, Anna contends that *McCarty* should not

be applied retroactively. We disagree. It is the general rule that decisional law is given retroactive effect; prospective application is an exception. *Bradbury v. Aetna Cas. & Sur. Co.,* 91 Wn.2d 504, 589 P.2d 785 (1979). In considering whether to limit a decision to prospective application, three factors are to be considered:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*In re Marriage of Brown,* 98 Wn.2d 46, 50, 653 P.2d 602 (1982) (quoting from *Taskett v. KING Broadcasting Co.,* 86 Wn.2d 439, 448, 546 P.2d 81 (1976); *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971)). *McCarty* does not establish a new principle of law, nor would retroactive application of *McCarty* be inequitable in this case. Whether a nonbeneficiary former spouse may recover part of the SBP annuity based on a community property interest is, indeed, an issue of first impression in this state. However, the result was clearly foreshadowed by *Wissner v. Wissner,* 338 U.S. 655, 659, 94 L. Ed. 424, 70 S. Ct. 398 (1949). In *Wissner,* an Army officer designated his parents as beneficiaries of a National Service Life Insurance policy purchased with community funds. Upon the officer's death, his widow sued the parents to recover one–half of the proceeds. The Supreme Court held that

while the proceeds were community property under California law, Congress intended the service member to exercise complete control over them. The Court relied on language in the National Service Life Insurance Act granting the service member the right to designate the beneficiary, and on a provision that payments, "'shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. . . .'" *Wissner,* 338 U.S. at 659. Congress manifested the same intent in the SBP provisions granting the service member the right to designate the beneficiary and insulating the annuity from invasion by legal process.

Retroactive application of *McCarty* is not inequitable in this case. Anna has not relied to her detriment on a trial court disposition of the SBP; there was no disposition. She was not the named beneficiary, never received any annuity payments and was never led to expect them. The trial court's oral opinion in the divorce action indicated that the retirement fund was to be awarded to John. The fact that John received retirement pay for over 3 years without Anna's objection suggests her acquiescence in the status quo. Except for an oversight in the divorce action which could not be remedied by a nunc pro tunc order, (*see Barros v. Barros,* 26 Wn. App. 363, 613 P.2d 547 (1980)), Anna would not have had even an arguable interest in the annuity under Washington law. We cannot say under these circumstances that it is inequitable to continue distributing the annuity to John's widow Rita in accordance with congressional intent.[4]

---

[4]Anna claims that *In re Marriage of Brown, supra,* held *McCarty* can never be applied retroactively. We disagree. The court merely found it inequitable to apply *McCarty* retroactively to the Brown and Wonders dissolutions because of the economic and emotional harm inherent in disturbing their property divisions. Those inequities do not exist in the case at bar.

Affirmed.

PETRICH, C.J., and PETRIE, J., concur.

Reconsideration denied April 8, 1983.

Review denied by Supreme Court November 4, 1983.