# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CT-01736-SCT

*JULIUS WILLIAMS, II*

*v.*

*BARBARA WILLIAMS*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/07/2007 |
| TRIAL JUDGE: | HON. SANFORD R. STECKLER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | HERBERT J. STELLY, JR. |
| ATTORNEY FOR APPELLEE: | CAROL L. HENDERSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED.  THE JUDGMENT OF THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY IS REVERSED AND RENDERED IN PART AND REVERSED AND REMANDED IN PART - 06/24/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.    This case turns on the interpretation of a property-settlement agreement between Julius and Barbara Williams, found by the chancellor to be "fair, sufficient and adequate" at the time the Judgment of Divorce was granted on May 16, 2006.  Subsequently, on November 14, 2006, Barbara filed a motion to clarify judgment and/or for modification of the property-settlement agreement, *inter alia*.  Julius responded by answer on January 18,

2007, and affirmatively raised that Julia was attempting to (1) "re-litigate the issues which have been settled and agreed upon [by] the parties," and (2) "modify a property settlement agreement which is contractual in nature between the parties." Julius argued that the court had "no authority or power to change the agreement of the parties; there [being] no ambiguity in the judgment and that said judgment was agreed to . . . after prolonged negotiations [and finally, the court] should not . . . change the terms of their express . . . agreement." A hearing was conducted on June 27, 2007, and a judgment entered, favoring Barbara on all issues, including the modification of the property-settlement agreement. The Court of Appeals reversed and rendered in part and reversed and remanded in part. *Williams v. Williams*, 2009 WL 1451342, at *6 (Miss. Ct. App. May 26, 2009). This Court granted certiorari. *Williams v. Williams*, 24 So. 3d 1038 (Miss. 2010). We affirm the judgment of the Court of Appeals and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2.     Julius and Barbara married on February 24, 1974. A final judgment of divorce on the ground of irreconcilable differences was entered in May 2006. The parties entered into a property-settlement agreement, which was ratified by the court in conjunction with the divorce judgment. Julius has worked as a policeman, postal carrier, and military reservist. After Julius married Wenoka Williams, Barbara moved to clarify judgment and/or for modification of the property-settlement agreement, specifically the paragraph entitled, "Survivor Benefit for Wife." Julius retired from the reserves on May 19, 2007, and exercised his option to participate in the Military Survivor Benefit Plan ("SBP"), naming Wenoka as

2

the beneficiary. In June 2007, a hearing was held on Barbara's motion. At that hearing, this language was at issue:

> It is the agreement and contract of the parties that the Wife is to have all survivors' benefits otherwise accorded to her by law including, but not limited to, fifty-five percent (55%) of Husband's survivor annuity, upon his death from Civil Service Retirement System. A QDRO will be entered allowing Wife 50% of Husband's Military Retirement based upon Husband's years of military service during this marriage. A QDRO will be entered allowing wife 55% of Husband's Survivor Annuity upon his death from Civil Service Retirement System.

After the hearing, the chancellor entered a qualified domestic-relations order ("QDRO"), directing Julius, *inter alia*, to complete the necessary documents so that Barbara would receive SBP benefits upon his death. The Court of Appeals reversed the chancellor's judgment, holding that "the chancellor was manifestly in error in interpreting the provision to award Julius's military survivor benefits to Barbara, as they were not specifically mentioned in the property settlement agreement and were not accorded to her 'by law.'" *Williams*, 2009 WL 1451342, at *5.

## ISSUES

¶3. Barbara's entitlement to the following is not at issue: (1) fifty percent of Julius's military-retirement benefits earned during the marriage and (2) fifty-five percent of Julius's civil-service survivor annuity plan. Thus, we are left with the following issues:

I. Whether the chancellor erred in finding that Barbara was entitled to Julius's Military Survivor Benefit Plan.

II. Whether the chancellor erred in awarding attorney fees.

## DISCUSSION

3

¶4. "When this Court reviews domestic relations matters, our scope of review is limited by the substantial evidence/manifest error rule." *Giannaris v. Giannaris*, 960 So. 2d 462, 467 (Miss. 2007) (citations omitted). "Therefore, we will 'not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.'" *Id.* (quoting *R.K. v. J.K.*, 946 So. 2d 764, 772 (Miss. 2007)).

**I. Whether the chancellor erred in finding that Barbara was entitled to Julius's Military Survivor Benefit Plan.**

¶5. The Court of Appeals accurately set forth our law:

> Mississippi law favors settling disputes by agreements. *In re Dissolution of the Marriage of De St. Germain*, 977 So. 2d 412, 420 (¶ 23) (Miss. Ct. App. 2008). Absent fraud or overreaching, parties are afforded wide latitude in entering property settlement agreements. *Steiner v. Steiner*, 788 So. 2d 771, 776 (¶ 17) (Miss. 2001). "Property settlement agreements are contractual obligations." *West v. West*, 891 So. 2d 203, 210 (¶ 13) (Miss. 2004) (citation omitted). "When the parties have reached [an] agreement and the chancery court has approved it, [the appellate court] ought to enforce it and take a dim view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts." *Id.* at 211 (¶ 15) (citation omitted).

*Williams*, 2009 WL 1451342, at *2.

¶6. The agreement of the parties should be enforced. It did not obligate Julius Williams to pay Barbara Williams military-survivor benefits. The property settlement did not provide her this benefit, nor is it "accorded to her by law." Further, equity does not require the result dictated by the trial court. For the reasons stated below, it was error to modify or reform the settlement agreement of the parties.

¶7. The property settlement states that Barbara "is to have all survivors' benefits otherwise accorded to her by law including, but not limited to . . . ." The only survivor benefit identified is the survivor annuity from Julius's civil-service retirement. In the very

4

next sentence, the agreement grants Barbara fifty percent of Julius's military-retirement benefits earned during the marriage. Military-survivor benefits are conspicuously absent from the agreement.

¶8. Assuming *arguendo* military-survivor benefits were to be considered part of the language at issue, the question whether they were otherwise accorded to her by law would have to be answered in the affirmative before a court could grant her beneficiary status. The Court of Appeals precisely determined the benefits were not. *Id.* at *3-5. The judgment of divorce was entered in May 2006, and Julius married Wenoka shortly thereafter. When he retired from the military reserves in May 2007, he named Wenoka as the beneficiary of the SBP, which is an optional program for military retirees. *See* 10 U.S.C.A. § 1448 (1998). A service member may not make an SBP election until after receiving a notice of eligibility upon completing the required twenty years of service. *See* 10 U.S.C.A. § 12731 (1998). A retiree from the reserve component is not eligible to receive retirement pay until the age of sixty. *See* 10 U.S.C.A. § 12731(f)(1) (1998). Julius testified that his retirement orders stated that his retirement pay would begin at age sixty. Julius's date of birth is November 21, 1951, thus, he will not be eligible to begin receiving retirement pay until November 2011. Julius retired a year after the divorce judgment. At the time of divorce, no benefits were accorded by law, as Julius was prohibited by the same law from electing to participate *vel non*. When the law permitted Julius to make an election, he was already married to Wenoka. "A person who has a former spouse upon becoming eligible to participate in the Plan *may* elect to provide an annuity to that former spouse." 10 U.S.C.A. § 1448(b)(2)(A) (1998) (emphasis added). However, a retiree is not *required* to do so. Thus, the benefit is accorded by

5

personal choice, not accorded by law. Julius also had the option or choice of naming his current wife, Wenoka, as the beneficiary and, in fact, did so. The statute grants rights to a present spouse, not available to former spouses.[1] "A court order *may* require a person to elect . . . to provide an annuity to a former spouse . . . ." 10 U.S.C.A. § 1450(f)(4) (1998) (emphasis added) (clause of statute irrelevant here recognized as repealed by implication in ***Sharp v. U.S.***, 580 F.3d 1234, 1237-38 (Fed. Cir. 2009)). However, a court is not *required* to do so, as the chancellor did *sub judice*, contravening the agreement of the parties. Since SBP benefits were not automatically bestowed upon Barbara, the language of the settlement agreement controls. Simply put, the chancellor should have enforced the agreement of the parties.

¶9.    One could reach the same conclusion by reading the plain language of the agreement. The referenced paragraph does not confer on Barbara the SBP benefit. As the nonexhaustive language ("including, but not limited to") is included only in the first sentence, it does not modify the subsequent sentence regarding the military retirement. Further, as Julius could not begin receiving retirement benefits for more than five years after the property agreement was entered, no benefit had accrued to him at the time of the agreement.

¶10.    Although the SBP is not entirely financed by a retiree's contributions, the annuity must be purchased via reductions in retirement pay. *See* 10 U.S.C.A. § 1452(a)(1)(B) (1998).

---

[1]A married participant in the plan may not, without the spouse's concurrence, elect to provide an annuity (1) at less than the maximum level, or (2) to a dependent child, but not to the spouse. *See* 10 U.S.C.A. § 1448(a)(3)(B) (1998). However, the retiree retains the right, or may be required, to provide an annuity to a former spouse. *See* 10 U.S.C.A. § 1448(a)(3)(D) (1998).

*See also* http://www.npc.navy.mil/CommandSupport/CasualtyAssistance/SBP/Retirees.html. (last viewed June 21, 2010). Once Julius begins drawing his military retirement in 2011, a portion of those benefits will be deducted per his election. *See id.* When Julius dies, his named beneficiary, if still living, will receive a monthly annuity for life.[2] *See* 10 U.S.C.A. § 1451(a)(2) (1998).

¶11.    The Court of Appeals dissent criticizes its majority for grounding its decision in law and opines the result is inequitable. *See Williams*, 2009 WL 1451342, at *6-7 (Myers, P.J., dissenting). Equity does not require the outcome dictated by the trial court. Equity can be served and the law of contracts honored by the chancellor ordering that the SBP annuity be purchased with the premiums deducted only from Julius's share of the reserve-retirement benefits, or that Julius pay Barbara one half of the deduction. Upon his death, his present wife, Wenoka, would receive the annuity. If the premiums are deducted only from Julius's portion of the retirement, or paid by Julius, he and Wenoka will have purchased the annuity using their separate marital funds. Thus, Barbara will not contribute to the purchase of the SBP annuity. All agree that Barbara has an interest in the military retirement that accumulated while she was married to Julius. Barbara will still receive her full share.

¶12.    Our holding is consistent with that of another court, which held that a former wife has no interest under federal law to the SBP annuity paid to a retiree's widow. *See Barros v. Barros*, 660 P.2d 770, 771-72 (Wash. Ct. App. 1983). Even though a small portion of the

---

[2]The amount generally will be thirty-five to fifty-five percent of the monthly retirement pay depending on the age of the beneficiary. *See* 10 U.S.C.A. §§ 1451(a)(2), 1451(f) (1998).

annuity was purchased with community property (the military-retirement benefits), that court held that the former wife's "claim conflict[ed] with express terms of the SBP. A service member can provide the annuity only for his dependent children, provide the annuity for his wife, or elect not to participate in the plan at all. In any case, the decision is solely that of the service member." *Id.* at 772.

**II.     Whether the chancellor erred in awarding attorney fees.**

¶13.    "'Generally the award of attorney's fees in a divorce case is left to the discretion of the trial court.'" *Chesney v. Chesney*, 849 So. 2d 860, 862 (Miss. 2002) (quoting *Cheatham v. Cheatham*, 537 So. 2d 435, 440 (Miss. 1988)). As the Court of Appeals found, "Barbara's motion for clarification was well taken by the chancellor on a number of other issues." *Williams*, 2009 WL 1451342, at *6. Therefore, we affirm the Court of Appeals on this issue and remand to the chancellor to determine the attorney-fee amount in light of this opinion.

## CONCLUSION

¶14.    Finding manifest error, we reverse the judgment of the trial court and remand the case to the Chancery Court of the First Judicial District of Harrison County for proceedings and entries of judgment consistent with this opinion.

¶15.    **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY IS REVERSED AND RENDERED IN PART AND REVERSED AND REMANDED IN PART.**

**CARLSON, P.J., DICKINSON, LAMAR, AND CHANDLER, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., GRAVES, P.J., AND PIERCE, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶16.   I agree with the majority that this case turns on the question of whether Julius's military survivor's benefits are "accorded to [Barbara] by law;" however, I disagree with the majority's conclusion that those benefits are not accorded to Barbara by law.

¶17.   As noted by the majority, servicemen and women are not *required* to participate in the Military Survivor Benefit Plan ("SBP"). 10 U.S.C.A. § 1448(a)(1)-(3) (1998); 10 U.S.C.A. § 1441, 1452 (1998).  However, persons entitled to military retirement are given the option to participate, and if they do, a portion of the participant's retirement pay is deducted from the retirement pay due the participant and allocated as a premium for his or her designated survivor's annuity. *Id*.  Despite the fact that a participant may elect to provide an annuity to his or her former spouse, *a participant may be court-ordered to participate in the SBP*. 10 U.S.C.A. § 1448(b)(2)(A) (1998); 10 U.S.C.A. § 1450(f)(4) (1998).  Accordingly, federal statutes provide that Barbara is eligible as a designee for the SBP.

¶18.   I concede that the benefits of the SBP are not automatically bestowed upon Barbara; but the same is true of the benefits of Julius's civil-service survivor's annuity and his military-retirement benefits, which are not automatically granted to Barbara either.  Julius testified that Barbara would not receive the survivor benefits related to Julius's civil-service employment unless a qualified domestic-relations order was entered to effectuate her receipt of such benefits, and the property-settlement agreement confirms this testimony by requiring an order to be entered to ensure that Barbara receives Julius's civil-service survivor's annuity and military retirement.  Therefore, I am not persuaded by Julius's argument that Barbara must receive the survivor benefits automatically for her to be accorded the benefit by law.  Accepting this argument, as the majority does, upholds Barbara's entitlement to one opt-in

9

survivor benefit program (the civil-service survivor annuity), *see, e.g.,* 5 U.S.C.A. § 8341(h)(1) (2007), yet denies her entitlement to Julius's military-survivor's annuity, a similar opt-in program.

¶19.     Moreover, the federal law is not the only law the chancellor was bound to address in determining whether Barbara was accorded Julius's military-survivor's annuity by law.  In particular, the "law" to be gleaned from the precedent of this Court is that "[a]ssets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor." ***Hemsley v. Hemsley***, 639 So. 2d 909, 915 (Miss. 1994).  At a hearing on the matter, the chancellor acknowledged as much, saying, "[U]nder Mississippi law it has always been the rule of the court that when one of the spouse's earnings are put into retirement, or part of it, that that is a marital asset[,] and that [a] marital asset accumulates for the use and benefit of both of these parties."

¶20.     Put simply, given that the SBP benefits are accorded to Barbara by both the federal statutes and the equitable jurisprudence of this state, I am unable to say that the chancellor was in manifest error in requiring Julius to accord Barbara those benefits, and I would affirm the chancellor on this issue.

¶21.     With regard to the second issue, the majority notes correctly that a chancellor has the discretion to award attorney fees and court costs in divorce cases.  Yet, the majority reverses the chancellor on this issue without finding that he abused his discretion.

¶22.     After entering judgment in Barbara's favor on the issue of military-survivor benefits, the chancellor required Julius to pay Barbara's attorney fees in the amount of $1,500 and court costs in the amount of $147.  Julius's sole argument on this issue is that Mississippi

courts have never required a successful appellant to pay attorney fees and/or court costs. However, this Court historically has left the determination of granting or denying attorney fees to the discretion of the trial court, and will not disturb that discretionary determination unless the chancellor's decision is manifestly wrong or an abuse of discretion. *R.K. v. J.K.*, 946 So. 2d 764, 778 (Miss. 2007); *Creekmore v. Creekmore*, 651 So. 2d 513, 520 (Miss. 1995).

¶23. Here, the chancellor heard evidence that Barbara had to borrow money in order to pay her attorney fee of fifteen hundred dollars, that Barbara's attorney had worked, at a minimum, twenty hours in seeking clarification and/or modification of the judgment, and that Barbara was disabled, with her income limited to her own retirement benefits. Although the chancellor did not make an explicit finding of reasonableness, it cannot be said, nor does Julius contend, that these fees and costs are unreasonable. That being the case, the chancellor's award of attorney fees and court costs to Barbara should be affirmed.

**WALLER, C.J., GRAVES, P.J., AND PIERCE, J., JOIN THIS OPINION.**

11