IRVING, P.J.,
for the Court:
¶ 1. This case is before this Court on appeal from the judgment of the Alcorn County Chancery Court by Anna White,[1] challenging the award of custody of her minor children to John White, Anna’s former husband. We find that the chancellor correctly applied the Albright[2] factors in determining the best interests of the chil *34 dren and, therefore, affirm the chancellor’s judgment.
FACTS
¶ 2. Anna and John were wed on October 13, 2001, in Lauderdale County, Alabama. Their marriage produced two children: Drew, born on May 10, 2002, and Kelli, born on March 13, 2003. Anna suffers from an optic-nerve condition which affects her eyesight, leaving her unable to drive. She also uses a wheelchair as a result of injuries she received in a car accident that rendered her an incomplete paraplegic.
¶ 3. During most of them marriage, the Whites resided in Alcorn County, Mississippi. John worked at ThyseenKrupp, ,and Anna stayed home with the children. John’s parents, Rick and Dorothy White, often assisted John and Anna in caring for the children.
¶ 4. In 2005, shortly before Kelli’s second birthday, Anna’s mother, Lynn Mitchell, claimed that Kelli disclosed to her that Rick had inappropriately touched her genitals. Rick denied the allegations when confronted by John and Anna. In December 2007, Anna claimed that Kelli again told her that Rick had inappropriately touched Kelli’s genitals. Anna and John again confronted Rick about the allegations, and Rick again denied touching Kelli inappropriately.
¶ 5. The allegations of abuse eventually caused strain on the Whites’ marriage, and on May 23, 2008, Anna and John separated. On May 28, 2008, Anna filed for a divorce in the chancery court on the ground of habitual cruel and inhuman treatment or, in the alternative, on the ground of irreconcilable differences. Anna retained custody of the children and moved them to an apartment in Lawrence-burg, Tennessee. After a hearing on August 13, 2008, the chancellor entered a temporary order granting Anna primary custody of the minor children and granting John visitation every other weekend. The temporary order also instructed John not to expose his children to Rick.
¶ 6. On February 20, 2009, the Whites filed a consent to divorce on the ground of irreconcilable differences but left the following issues for the chancellor to decide: custody of the children, visitation rights, restrictions to be placed upon contact with the paternal grandparents, determination of marital property and division of property, debts, child support, medical insurance for the children, alimony, and attorney’s fees. On May 22, 2009, the chancellor appointed a guardian ad litem (GAL) to represent the children and investigate the allegations of sexual abuse. On July 24, 2009, the GAL filed her initial report with the court. The GAL filed a supplemental report on August 10, 2009, at the request of the chancelloi’, to discuss the issues of whether Rick was a threat to the children and whether it would be harmful to the best interests of the children to be in Rick’s presence, even in a restricted manner. The GAL interviewed the Whites and their children, the paternal grandmother, the maternal grandparents, several neighbors, friends, and the proposed witnesses of both parties. Additionally, the GAL visited Anna’s home and personally supervised a visitation between Rick, Kelli, and Drew. In her supplemental report, the GAL concluded that Rick presented no threat to the children and recommended that they be allowed to visit with him. However, the GAL cautioned that because of the length of time since the children had last engaged in any contact with Rick, visitation should be restricted, and she suggested that Rick not be allowed to be alone with Kelli.
¶ 7. On August 14, 2009, the chancellor entered a judgment awarding John pri *35 mary physical custody of the children, finding that such was in the children’s best interests. The chancellor found no credible evidence supporting the sexual-abuse allegations. On August 24, 2009, Anna filed a motion for a new trial, reconsideration, or other relief. On September 21, 2009, the chancellor entered a final judgment and denied Anna’s request for a new trial, reconsideration, or other relief. Anna now appeals the chancellor’s August 14, 2009 judgment and the September 21, 2009 final judgment, arguing that the chancellor erred by determining that Rick did not sexually abuse Kelli, failing to make appropriate findings as to each Al-bright factor, and inappropriately weighing Anna’s physical disability when determining primary physical custody of the children. We find that Anna’s assertions of error can be summarized as a single consideration of whether substantial evidence supports the chancellor’s findings and custody determination.
¶ 8. Additional facts, as necessary, will be related during our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 9. Chancellors possess broad discretion in domestic-relations cases, and an appellate court will not disturb the findings of a chancellor “unless the chancellor was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied.” Williams v. Williams, 37 So.3d 1171, 1174 (¶ 4) (Miss.2010) (quoting Giannaris v. Giannaris, 960 So.2d 462, 467 (¶ 8) (Miss.2007)). When reviewing a case on appeal, an appellate court “does not reevaluate the evidence, retest the credibility of witnesses, [or] otherwise act as a second fact-finder.” Bower v. Bower, 758 So.2d 405, 412 (¶ 31) (Miss.2000) (citation omitted).
¶ 10. In considering Anna’s claims, we acknowledge that the “the polestar consideration in child[-]custody cases is the best interest and welfare of the child.” Albright, 437 So.2d at 1005. With respect to determining a child’s best interest, the Mississippi Supreme Court has stated that chancellors making custody decisions must consider the age of the child; the health and sex of the child; the continuity of care prior' to the separation; parenting skills and willingness to provide primary childcare; employment and responsibilities of employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school, and community record of the child; the preference of the child; stability of the home environment and employment of each parent; and other factors relevant to the parent-child relationship. Id.
¶ 11. In applying the standard of review, we find that substantial evidence undergirds the chancellor’s decision. As to the Albright factors, the chancellor found that the age of the children, the continuity of care prior to separation, the emotional ties of parent and child, and the preference expressed by the children favored neither parent. However, the chancellor concluded that Kelli’s well-being had been negatively impacted by the sexual-abuse allegations, and, therefore, the factor regarding the health of the children slightly favored John. As to parenting skills and willingness to provide childcare, the chancellor found that Anna’s pursuit of the sexual-abuse allegations and unwillingness to allow the children to participate in extracurricular activities had had a negative impact, and, therefore, this factor also favored John. The chancellor found that the employment of the parents favored John as well, because he was employed and had expressed a willingness to modify *36 his employment to allow more time with the children. The chancellor found that the physical health of the parties favored John due to Anna’s “significant physical limitations, ... being crippled from the waist down and legally blind.” The chancellor found that the moral fitness of the parents slightly favored Anna, as she had taken the children to church. As to the home, school, and community record of the children, the chancellor noted that the children had performed well in Tennessee, but Anna’s inability and unwillingness to allow the children to participate in extracurricular activities caused that factor to favor John slightly. The chancellor found that John had been steady in his employment and place of residence, while Anna was unemployed and living in a home “clearly above her financial means”; as a result, the chancellor found that the factor of stability of the home environment favored John. In discussing other factors relevant to the parent-child relationship, the chancellor noted the following regarding the sexual-abuse allegations and the effect that they had had on Kelli:
A strong concern that this [c]ourt has is that the [p]laintiff[, Anna White,] has not only allowed, but with the well-meaning instigation of her motherf, Lynn Mitchell], to keep a healing process of [Kelli White] from happening by continually bringing up the subject of [the] alleged sexual abuse by [Rick White], which the [c]ourt has found did not occur based upon the lack of credible evidence submitted to the [c]ourt, and this is harmful to the child and children. It is with [sic] particular note that [Edward Mitchell], maternal grandfather of the children and father of the [p]laintiff[, Anna White], testified that [Kelli] did not remember anything about the first incident. So, how was it that [Kelli] became aware of it again unless someone planted it in her mind? The undersigned [c]hancellor has answered this by reaching his conclusion that this was placed into the mind of [Kelli] through her mother[, Anna White,] by constant instigation of [Kelli’s] grandmother, [Lynn Mitchell], whose own testimony the [c]ourt found to be unresponsive and evasive in part, but caring for the children as a whole.
The chancellor then concluded that this factor favored John. In his final judgment, that was entered after Anna filed a motion for a new trial, the chancellor noted that there was a strong emotional bond between Anna and Drew but explained that it was in the children’s best interests to remain together in John’s custody. The chancellor also noted that Anna’s disability “was the least of the [Albright] factors” that he had relied upon.
¶ 12. In his opinion and judgment addressing custody, the chancellor acknowledged that he was bound to consider the factors set forth in Albright when determining the best interests and welfare of the children. As explained above, the chancellor found that multiple factors favored John, while only the moral-fitness factor favored Anna. The record shows that the chancellor carefully considered each of the Albright factors before determining that John should have custody of the minor children. Given our standard of review, we find no reason to overturn the chancellor’s judgment.
¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF ALCORN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ., *37 CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Fictitious names have been used for the parties in this case to protect the identity of the minor children.

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).